[Cite as *Hamilton v. Ball*, 2014-Ohio-1118.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| BENJAMIN HAMILTON, ET AL., | : | |
| Plaintiffs-Appellants/Cross-Appellees, | : | |
| | | Case No. 13CA3533 |
| v. | : | |
| | | DECISION AND |
| DANNY BALL dba BP AUTO SALES, | : | JUDGMENT ENTRY |
| Defendant-Appellee/Cross-Appellant. | : | RELEASED 03/19/2014 |

APPEARANCES:

D. Dale Seif, Jr., Dale Seif & Associates, LLC, Waverly, Ohio, for Appellants/Cross-Appellees.

Richard A. Cline, Richard Cline & Co., LLC, Columbus, Ohio, and Lynn A. Grimshaw, Wheelersburg, Ohio, for Appellee/Cross-Appellant.

Hoover, J.

{¶ 1}  Benjamin, Sarah, and Dallas Hamilton filed suit against Danny Ball dba BP Auto Sales after they learned that the used 2006 Pontiac Torrent that Ball had sold them had previously sustained unibody damage.  Following a bench trial, the trial court found that Ball committed a single violation of the Ohio Consumer Sales Practices Act ("CSPA") and awarded treble damages and attorney's fees to Benjamin and Sarah Hamilton.  The Hamiltons appeal the trial court's judgment, arguing that Ball committed multiple CSPA violations; that the trial court erred in ruling against them on their fraud and unjust enrichment claims, and by dismissing their Deceptive Trade Practices Act ("DTPA") claim; that the trial court improperly calculated the damage award and attorney fee award; and that the trial court erred in dismissing Dallas Hamilton's claims under the CSPA.  Ball cross-appeals, contending first that the inclusion of an

"as is" clause in the vehicle purchase agreement precluded the Hamiltons' CSPA claims. Alternatively, Ball contends that he did not violate the CSPA; and thus the Hamiltons are not entitled to damages or attorney's fees in any amount. Next, Ball contends that even if his actions constitute a CSPA violation, the trial court improperly calculated the damage award and attorney fee award. Finally, Ball contends that Sarah Hamilton was not entitled to damages under the CSPA because she was not a party to the transaction, and thus was not a "consumer" entitled to CSPA protections. For the following reasons, we affirm in part, modify in part, and affirm the judgment as modified.

## I.        Factual & Procedural Background

{¶ 2} In October 2011, Benjamin, Sarah, and Dallas Hamilton[1] filed a complaint in the Scioto County Common Pleas Court alleging that after they purchased a used 2006 Pontiac Torrent from Ball, they learned that the vehicle had unibody damage which was not disclosed to them at the time of purchase. The Hamiltons brought identical claims alleging that Ball (1) committed fraud; (2) was unjustly enriched; (3) violated R.C. 1345.02 and 1345.03 of the CSPA; and (4) violated the DTPA. The Hamiltons sought treble actual economic damages, statutory damages, and noneconomic damages under the CSPA claims; actual and punitive damages under the remaining claims; and attorney's fees, costs, and pre and post judgment interest.

{¶ 3} The complaint contained a jury demand, but the parties ultimately agreed to proceed with a bench trial. At the bench trial, it was adduced that Ball had originally purchased the 2006 Torrent from Manheim Auto Auction ("Manheim") in Grove City, Ohio, for $7,880 ($7,600 purchase price + $280 buyer's fee) with the purpose of reselling the vehicle at his

---

[1] Benjamin and Sarah Hamilton are husband and wife. Dallas Hamilton, a minor, is their son.

business, BP Auto Sales.    Ball spent an additional $325.02 on repairs to the windshield and one of the wheel bearings before offering the Torrent for resale.

{¶ 4}  Sarah Hamilton testified that she and Benjamin visited the BP Auto Sales used car lot in January 2011 after being referred there by a family member.  She further testified that the Hamiltons were seeking a safe vehicle to transport their infant son, Dallas Hamilton.  According to Mrs. Hamilton's testimony, Ball told the Hamiltons that the 2006 Torrent "was a good vehicle and that it would be a great family car."  The Hamiltons inspected and test-drove the vehicle prior to purchasing it for $9,500 on January 29, 2011.  The vehicle was sold "as is" -- without warranty.

{¶ 5}  Sarah Hamilton drove the Torrent without incident for several months.  Then in the summer of 2011, she took the vehicle to a car dealership in Columbus, Ohio, and attempted to trade it in for a larger automobile.  The Columbus dealership offered a low trade-in value for the Torrent and informed the Hamiltons that Manheim had previously determined that the vehicle had unibody damage.

{¶ 6}  Despite never having the Torrent independently examined, Sarah Hamilton testified that she stopped driving the vehicle after learning of the reported unibody damage because she felt it was unsafe.  Benjamin Hamilton, the actual titleholder of the vehicle, similarly testified that while he knew of no specific damage to the Torrent, he believed it to have unibody damage based upon the AutoCheck report produced by the Columbus dealership.

{¶ 7}  Greg Chesko, Assistant General Manager at Manheim, also testified at trial. Chesko explained that Manheim typically auctions cars to automobile dealers at wholesale; and the dealers then sell the cars to consumers at retail.  The auction at which Ball purchased the

2006 Torrent was only open to automobile dealers, and was not open to the public. The Manheim dealer auction typically sells about 80 cars per hour, per lane. The dealer auction runs from 9:00 a.m. to about 1:00 p.m., and between 2,200 and 2,600 cars are sold per auction. Chesko testified that while there is no minimum bid at auction, the auctioneer will not accept a bid that is obviously well below wholesale market value. Once an opening bid is accepted, all other bids must exceed it by $50 or $100. The closing price at auction is the wholesale market value of the car, taking into account all defects in the vehicle announced by the auction.

{¶ 8} Chesko explained that Manheim conducts an initial inspection on every inventoried vehicle prior to auction. If frame or unibody damage is obvious at the initial inspection stage, Manheim will label the condition for announcement at auction. If the initial inspection is inconclusive, a Manheim mechanic may conduct a more comprehensive inspection of the vehicle. When Manheim is aware that a car has unibody damage, it includes the condition in its internal records and it makes an "announcement" by displaying a yellow caution light while the car is on the auction block. The auctioneer is also supposed to orally announce the condition during auction of the vehicle; and a television screen visible during the auction also lists any frame or unibody damage. Chesko testified that out of every 2,000 vehicles sold at auction; approximately 100 of those vehicles have unibody damage.

{¶ 9} Chesko further testified that with respect to the 2006 Torrent, the initial inspection was inconclusive; but after a more thorough inspection, a Manheim mechanic had determined that there was unibody damage to the right front apron of the Torrent. The damage, however, was not severe enough to warrant further inspection or repair before auction of the vehicle. According to Manheim protocol, the Torrent was presumably announced as having unibody damage during the auction.

{¶ 10} Ball testified that he was unaware of the unibody damage to the Torrent when he sold it to the Hamiltons, claiming that he must have missed the announcement at auction. Ball did however inform the Hamiltons about the repairs he made to the windshield and wheel bearing.

{¶ 11} Several exhibits were also admitted at trial, including the Manheim sales receipt and the BP Auto Sales purchase agreement. Ball admittedly signed the sales receipt, which indicates the unibody damage on the face of the document. Ball claims, however, that he did not read the sales receipt prior to signing the document. The BP Auto Sales purchase agreement, signed by Benjamin Hamilton, also contains a clear "as is" clause on the face of the document.

{¶ 12} Following the bench trial, the trial court found that Ball "failed to notice the auctioneer's announcement about unibody damage to the auto and the yellow light indicating the damage." The trial court further found, however, that Ball signed the Manheim sales receipt, which "clearly show[ed] the yellow designation and unibody damage"; and that Ball failed to inform the Hamiltons of the unibody damage when they purchased the Torrent from his business. The trial court concluded that while Ball "did not have actual knowledge of the unibody damage[,]" "he did have constructive notice of the damage to the unibody." Ultimately, the trial court found in favor of Ball on the fraud and unjust enrichment claims, and dismissed the DTPA claims for lack of standing, but awarded $1,249.98 in damages to Sarah and Benjamin Hamilton under the CSPA.[2] The damages were trebeled for a total of $3,749.94. The trial court also

---

[2] The trial court initially journalized a decision and judgment entry on October 3, 2012, from which the Hamiltons appealed. *See Benjamin Hamilton, et al. v. Danny Ball dba BP Auto Sales*, 4th Dist. Scioto No. 12CA3521. On December 26, 2012, however, we dismissed the appeal for lack of a final appealable order because the trial court's decision and judgment entry did not address any of the claims brought by Dallas Hamilton. On January 23, 2013, the trial court journalized a nunc pro tunc decision and judgment entry in which it determined that "no evidence [was] presented on behalf of Dallas Hamilton." Thus, the trial court dismissed his claims.

awarded the Hamiltons $10,126.50 in attorney's fees.  The Hamiltons filed an appeal, and Ball

filed a cross-appeal from the trial court's judgment.

II.        Assignments and Cross-Assignments of Error

{¶ 13}  The Hamiltons assign the following errors for our review:

Assignment of Error I

> The trial court committed reversible error by concluding that Defendant-Appellee
> Danny Ball dba BP Auto Sales did not have actual knowledge of the damage to
> the vehicle, and then dismissing Appellant's fraud claim.

Assignment of Error II

> The trial court committed reversible error by allowing parol evidence that
> specifically contradicted the four corners of the document.

Assignment of Error III

> The trial court committed reversible error by failing to find multiple CSPA
> violations when the specific acts and practices were listed in the Online Public
> Inspection File as consumer violations.

Assignment of Error IV

> The trial court committed reversible error by failing to award damages to
> Plaintiffs for Defendant-Appellee's failure to register a fictitious name with the
> Ohio Secretary of State.

Assignment of Error V

> The trial court committed reversible error when calculating the damages.

Assignment of Error VI

> The trial court committed reversible error by failing to award non-economic
> damages to each Plaintiff.

Assignment of Error VII

> The trial court committed reversible error by dismissing Plaintiffs-Appellants'
> unjust enrichment claim.

Assignment of Error VIII

> The trial court committed reversible error by finding that Plaintiffs lack standing
> to bring a claim under Deceptive Trade Practices Act ("DTPA").

Assignment of Error IX

    The trial court abused its discretion by arbitrarily reducing the attorneys' fees based on a 1980's rate for trial attorneys' fees.

Assignment of Error X

    The trial court abused its discretion by dismissing Plaintiff Dallas Hamilton's CSPA claims.

    {¶ 14} In his cross-appeal, Ball assigns the following errors for our review:

Cross-Appellant's Assignment of Error I

    The trial court erred in finding that Mr. Ball violated the Consumer Sales Practices Act when he told the Hamiltons that the 2006 Torrent was in "good condition" because Mr. Hamilton purchased the car "as is" and without warranty, and thus his Consumer Sales Practices Act claim based on undisclosed defects in the car was barred as a matter of law. *Tisdale v. Direct Detail*, 8th Dist. No. 97503, 2012-Ohio-3252, 2012 WL 2930803. Accordingly, the verdict was against the manifest weight of the evidence. [*Tr. 8*].

Cross-Appellant's Assignment of Error II

    The trial court erred when it found a violation of the Consumer Sales Practices Act because Mr. Ball described a 2006 Torrent with unibody damage as in "good condition." Mr. Ball had a basis in fact for that statement, and therefore the statement was not deceptive under the Consumer Sales Practices Act. There was no credible evidence in the record upon which the trial court could conclude that Mr. Ball's description of the car was deceptive, and therefore the trial court's verdict was against the manifest weight of the evidence. [*Record, passim*].

Cross-Appellant's Assignment of Error III

    The trial court erred by awarding actual damages when it used the wholesale price for the 2006 Torrent to set the fair market value of the car to calculate damages under the CSPA. Even if Mr. Hamilton proved a CSPA violation, he was only entitled to $200.00 in statutory damages. There was no statutory basis to award treble damages, because there is no case in the Ohio Public Information File (OPIF) wherein a court found the failure to disclose unibody damage that was unknown to the seller constitutes a deceptive act or practice under the CSPA. [*Record, Passim*].

Cross-Appellant's Assignment of Error IV

    The trial court erred when it found in favor of and awarded damages under the CSPA to Sarah Hamilton, who was not a party to the consumer transaction, and thus was not a "consumer" entitled to protections under the CSPA. Accordingly,

the trial court's judgment in favor of Sarah Hamilton is unsupported by credible evidence and is against the manifest weight of the evidence. [*Tr. 40, Exhibit 1*].

Cross-Appellant's Assignment of Error V

The trial court erred when it awarded attorney fees, as Mr. Ball did not violate the CSPA. Alternatively, the trial court erred in awarding attorney fees after the trial court found that Mr. Ball did not knowingly violate the CSPA. Even if some award of attorney fees was proper, the trial court erred when it awarded attorney fees for CSPA claims asserted on behalf of Sarah Hamilton and Dallas Hamilton and when it awarded attorney fees for non-CSPA claims asserted against Mr. Ball but upon which Mr. Ball prevailed at trial. [*Record, passim*].

### III.     Law & Analysis

*A.     Standard of Review*

{¶ 15}  "Generally, we will uphold a trial court's judgment as long as the manifest weight of the evidence supports it – that is, as long as some competent and credible evidence supports it."[3] *Bevens v. Wooten Landscaping, Inc.*, 4th Dist. Pike No. 11CA819, 2012-Ohio-5137, ¶ 12, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17; *Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.  "This standard of review is highly deferential and even 'some' evidence is sufficient to support a court's judgment and to prevent a reversal." *Id.*, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997); *William v. Cole*, 4th Dist. Adams No. 01CA725, 2002-Ohio-3596, ¶ 24.

{¶ 16}  "Although appellate courts will ordinarily afford great deference to a trial court's factual findings, appellate courts do not afford any deference to a trial court's application of the law.  Instead, appellate courts must independently review whether a trial court properly applied the law." *Id.* at ¶ 13, citing *Lovett v. Carlisle*, 179 Ohio App.3d 182, 2008-Ohio-5852, 901

---

[3] *But see State v. Rose Chevrolet, Inc.*, 12th Dist. Butler No. CA91-12-214, 1993 WL 229392 (June 28, 1993) (Reviewing CSPA damages and award of attorney's fees under abuse of discretion standard).

N.E.2d 255, ¶ 16 (4th Dist.); *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21.

**B.      *The Hamiltons' Fraud, Unjust Enrichment, and DTPA Claims***

{¶ 17}  For ease of analysis, we will consider the assignments of error and cross-assignments of error out of order.  First, we will address the Hamiltons' assignments of error that pertain to their claims of fraud, unjust enrichment, and the DTPA.  Then, we will address the assignments of error and cross-assignments of error pertaining to the CSPA claims.

**1.      The Fraud Claim**

{¶ 18}  In their first and second assignments of error, the Hamiltons argue that the trial court improperly dismissed their fraud claim.  In order to succeed on a claim of fraud, a claimant must prove the following elements:

> (a) a representation, or where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Parks v. Parks*, 4th Dist. Washington No. 12CA37, 2013-Ohio-3595, ¶ 11, citing *Swanson v. Boy Scouts of Am.*, 4th Dist. Vinton No. 07CA663, 2008-Ohio-1692, ¶ 17, fn. 2.

{¶ 19}  The trial court determined that Ball did not commit fraud because he did not knowingly conceal the unibody damage with the intent to mislead the Hamiltons.  The trial court

pointed to Ball's testimony that he was unaware of the announced condition, and reasoned that the testimony was credible given the fast-paced nature of the Manheim auction process.

{¶ 20}  The Hamiltons contend that the trial court incorrectly determined that Ball did not have actual knowledge of the reported unibody damage because the Manheim sales receipt clearly noted the unibody announcement.  Alternatively, the Hamiltons argue that the trial court violated the parol evidence rule when it relied on evidence outside of the four-corners of the Manheim sales receipt, in reaching its conclusion that Ball did not have actual knowledge of the reported unibody damage.

{¶ 21} Here, we must uphold the trial court's factual findings so long as some competent, credible evidence supports them.  While the Hamiltons are correct that the Manheim sales receipt signed by Ball noted the unibody damage; evidence exists that Ball did not read the sales receipt prior to signing it and that Ball did not hear the oral pronouncement of unibody damage or notice the yellow caution light when he purchased the vehicle at the Manheim auction.  Thus, the trial court's conclusion that Ball was not actually aware of the reported unibody damage - and thus did not intentionally misrepresent or conceal that fact with the purpose to mislead the Hamiltons - is not against the manifest weight of the evidence.

{¶ 22}  The Hamiltons' parol evidence argument is also misplaced.  "The parol evidence rule provides that 'absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' "  *S. Ohio Med. Ctr. v. Trinidad*, 4th Dist. Scioto No. 03CA2870, 2003-Ohio-4416, ¶ 17, quoting 11 Williston on Contracts (4th Ed.1990) 569–70, Section 33:4.

{¶ 23}  Ball testified that he was not aware of the auction's announcement of unibody damage when he bought the Torrent at auction, and that he did not read the sales receipt prior to signing it.  This testimony does not amount to an attempt to vary, contradict, or supplement the sales receipt he signed with Manheim.  In fact, the trial court expressly recognized that the terms of the sales receipt signed by Ball put him on constructive notice of the reported unibody damage.  However, constructive notice is not sufficient to carry a fraud claim – where one must show that a representation, or concealment of a material fact was made knowingly.  Thus, the trial court properly considered Ball's testimony to resolve the factual dispute regarding whether Ball had actual knowledge of the reported unibody damage when he sold the Torrent to the Hamiltons.  Accordingly, the Hamiltons' parol evidence argument is misplaced.

{¶ 24}  For the above stated reasons, the Hamiltons' first and second assignments of error are overruled.

2.      The Unjust Enrichment Claim

{¶ 25}  In their seventh assignment of error, the Hamiltons contend that the trial court erred by dismissing their unjust enrichment claim.  Specifically, the Hamiltons argue that the trial court improperly added a scienter element to unjust enrichment claims.

{¶ 26}  Unjust enrichment occurs " 'when a party retains money or benefits which in justice and equity belong to another.' " *HAD Ents. v. Galloway,* 192 Ohio App.3d 133, 2011–Ohio–57, 948 N.E.2d 473, ¶ 8 (4th Dist.), quoting *Cooper v. Smith,* 155 Ohio App.3d 218, 2003–Ohio–6083, 800 N.E.2d 372, ¶ 30 (4th Dist.), in turn citing *Liberty Mut. Ins. Co. v. Indus. Comm.,* 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988).  In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: " '(1) a benefit conferred by a

plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the

benefit by the defendant under circumstances where it would be unjust to do so without

payment.' " *Id*. at ¶ 8, quoting *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465

N.E.2d 1298 (1984).

{¶ 27}  The trial court found in favor of Ball on the Hamiltons' unjust enrichment claims,

noting that:

> It is important here that the vehicle was purchased at an auction against other
>
> dealers since this sets the price for resale.  The Defendant had no actual
>
> knowledge of the unibody damage to the vehicle.  Therefore, the Defendant did
>
> not have the required level of knowledge for unjust enrichment.  The Defendant
>
> even testified to the fact that he sold the vehicle to the Plaintiffs for less than the
>
> typical retail price because of the referral.  There is no cause of action for unjust
>
> enrichment where the Defendant set his price based on the market price he paid.
>
> The Plaintiffs have failed to prove that the Defendant had the prerequisite
>
> knowledge necessary to prove unjust enrichment.  Therefore, this Court finds in
>
> favor of the Defendant on the unjust enrichment claim.

{¶ 28}  It is clear from the above language that the trial court determined that the

Hamiltons could not prove the first two elements necessary to prevail on their unjust enrichment

claim.  First, the Hamiltons' own witness, Greg Chesko, testified that the purchase price for the

vehicle was very fair; and if anything, it was priced below retail value even with the reported

unibody damage.  Thus, the trial correctly determined that no benefit was conferred by the

Hamiltons in favor of Ball.  Second, the trial court determined that even if there was a benefit

conferred by the Hamiltons by virtue of their unknowing purchase of the Torrent with the unibody damage, such benefit was not known by Ball. The trial court apparently found Ball's testimony that he was unaware of the unibody damage credible. The trial court was not adding a scienter element as the Hamiltons allege; but rather the trial court was speaking to the Hamiltons inability to prove the second element needed to carry their unjust enrichment claim. Because some competent, credible evidence supports the trial court's findings of fact, we uphold its judgment in favor of Ball on the unjust enrichment claim. Accordingly, the Hamiltons' seventh assignment of error is overruled.

> 3.     The DTPA Claim

{¶ 29} In their eighth assignment of error, the Hamiltons contend that the trial court erred by finding that they lacked standing to bring a claim under the DTPA. Specifically, the Hamiltons argue that neither the statutory language, nor the case law excludes consumers from recovering under the DTPA. We disagree.

{¶ 30} R.C. 4165.03(A) permits a "person" to seek injunctive relief or actual damages if the person is damaged or injured by a "person who commits a deceptive trade practice." Under the DTPA, a "person" is defined as "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, limited liability company, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." R.C. 4165.01(D). Thus, whether the Hamiltons have standing under the DTPA depends on whether an "individual," as used in the definition of a "person" set forth in R.C. 4165.01(D), includes an individual consumer.

{¶ 31} While the interpretations of the DTPA by our sister districts and the federal district courts located in this state are not controlling, we may nonetheless look to their decisions on similar issues for guidance. In fact, both the Hamiltons and Ball cite cases from courts outside this district in support of their arguments; and the trial court in this instance relied on authority from the U.S. District Court, Southern District of Ohio when it held that consumers lack standing to file suit under the DTPA.

{¶ 32} The trial court relies primarily on *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677 (S.D. Ohio 2012), for the proposition that consumers lack standing to file suit under the DTPA. In *Gascho*, the court concluded that consumers lack standing under DTPA because:

> [I]t is implicit in [the DTPA] that the definition of "person" only includes persons engaging in some type of "business, vocation, or occupation." Any contrary interpretation would be nonsensical. Based on this reasoning, a person who seeks recovery under the DTPA must also be engaged in some type of commercial activity, as that is how the term "person" is used in these statutes. Thus, while an individual may be able to sue a person engaged in deceptive trade practices during the course of his or her commercial activities, it must be in that individual's capacity as a participant in commercial activity.

*Id*. at 698. The *Gascho* court acknowledged its earlier decision in *Bower v. Internatl. Business Machines, Inc.,* 495 F.Supp.2d 837, 842–44 (S.D.Ohio 2007) – a case relied upon by the Hamiltons – which held that a consumer can bring a cause of action based on a violation of the DTPA. However, the *Gascho* decision reversed course from *Bower* partly because it

acknowledged that Ohio courts look to the Lanham Act for guidance when adjudicating claims under the DTPA, and a number of federal circuit courts have found that consumers lack standing under the Lanham Act. *Id.*

{¶ 33} We agree with the trial court's reliance of *Gascho*, and conclude that consumers lack standing to file suit under the DTPA. The proper remedy for consumers seeking redress against unfair, deceptive, or unconscionable acts in the sale of consumer goods or services is through the CSPA. Moreover, we are hardly the first court to hold that consumers lack standing under the DTPA. *See Gascho,* supra; *Dawson v. Blockbuster, Inc.*, 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240, ¶¶ 21-25 (holding that consumers lack standing to file suit under the DTPA); *Robins v. Global Fitness Holdings, LLC*, 838 F.Supp.2d 631, 649-650 (N.D. Ohio 2012) (finding that a consumer may not pursue a claim under the DTPA); *CitiMortgage, Inc. v. Crawford*, 934 F.Supp.2d 942, 950 (S.D. Ohio 2013) (holding that a consumer does not have standing to sue under the DTPA). The trial court properly dismissed the DTPA claims because the Hamiltons lack standing under the Act. Accordingly, the Hamiltons' eighth assignment of error is overruled.

## C.     *The CSPA Related Issues*

{¶ 34} The remaining assignments of error and cross-assignments of error pertain to the Hamiltons' claims under the CSPA. The CSPA prohibits suppliers from committing either unfair or deceptive acts or practices or unconscionable acts or practices in connection with a consumer transaction. R.C. 1345.02 and 1345.03. Under the CSPA, a "supplier" is a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions [.]" R.C. 1345.01(C). And as pertinent here, a "consumer transaction"

includes the sale or transfer of an item of goods to an individual that is primarily for personal, family, or household use. *See* R.C. 1345.01(A).

{¶ 35} While the CSPA prohibits suppliers from committing an "unfair or deceptive act or practice" in connection with a consumer transaction, it does not define those terms. *See* R.C. 1345.02(A). However, R.C. 1345.02(B) contains a nonexhaustive list of "deceptive" practices. Similarly, while prohibiting suppliers from committing an "unconscionable act or practice" in connection with a consumer transaction, the Act does not define the term "unconscionable." *See* R.C. 1345.03(A). However, R.C. 1345.03(B) contains a list of "circumstances" that should be taken into consideration when determining whether an act or practice is unconscionable.

{¶ 36} To further inform the legal community, consumers, and suppliers of their rights and responsibilities under Ohio consumer laws, the CSPA authorizes the state's attorney general to "[a]dopt * * * substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02 [and] 1345.03." R.C. 1345.05(B)(2). Such rules are published in the Ohio Administrative Code. R.C. 1345.05(F). Moreover, the CSPA requires the state's attorney general to:

> Make available for public inspection * * * all judgments, including supporting
>
> opinions, by courts of this state * * * determining that specific acts or practices
>
> violate section 1345.02 [and] 1345.03[.]

R.C. 1345.05(A)(3). These judgments and opinions are published in the Online Public Inspection File ("OPIF") on the attorney general's website. *See www.opif.ag.state.oh.us*. The absence of an act or practice from the administrative rules or the OPIF database does not mean that the act or practice is not unfair, deceptive, or unconscionable.

{¶ 37}  In order to prove a violation of R.C. 1345.02, a consumer need not prove that the supplier actually intended to deceive him.  *Gallagher v. WMK Inc.*, 9th Dist. Summit No. 23564, 2007-Ohio-6615, ¶ 29, citing *Borror v. MarineMax of Ohio Inc.*, 6th Dist. Ottawa No. OT-06-010, 2007-Ohio-562, ¶ 37; *see also Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, ¶ 19 (4th Dist.).  " 'It is not a defense to show that the act was not done intentionally, or without knowledge that it was false, misleading or deceptive.' "  *Gallagher* at ¶ 29, quoting *Fletcher v. Don Foss of Cleveland Inc.*, 90 Ohio App.3d 82, 86, 628 N.E.2d 60 (8th Dist.1993).  "The consumer need only show the supplier's conduct had 'the likilhood of inducing in the mind of the consumer a belief which is not in accord with the facts.' "  *Id.*, quoting *Borror* at ¶ 37; *see also Shumaker* at ¶ 19.

{¶ 38}  In contrast, "[w]hile proof of intent is not required to prove deception under R.C. 1345.02, proof of knowledge is a requirement to prove an unconscionable act under R.C. 1345.03."  *Garber v. STS Concrete Co.*, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 30 (8th Dist.).

{¶ 39}  Because the CSPA is a remedial law designed to compensate for inadequate traditional consumer remedies, it must be liberally construed pursuant to R.C. 1.11.  *Shumaker* at ¶ 17, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990).

1.      The Effect of the "As Is" Clause on the CSPA Claims

{¶ 40}  In his first cross-assignment of error, Ball contends that the inclusion of an "as is" clause in a vehicle purchase agreement precludes relief under the CSPA for a supplier's failure to disclose a defect in the vehicle.  While we acknowledge an apparent conflict among the state's appellate districts on this very issue, we disagree with Ball's argument and conclude that an "as is" disclaimer of warranties does not preclude relief under the CSPA.

{¶ 41} Here, Benjamin Hamilton signed a purchase agreement when he bought the 2006 Torrent from Ball. The purchase agreement contains the following notices:

Sold AS IS condition. Seller makes NO Guaranty or warranty, express or implied of item or items sold, and specifically makes NO guarantee or warranty of fitness or merchantability, for any purpose.

**I have read the above and accept conditions as stated above.**

**/s/ _Benjamin Hamilton_**

    **Signature of Purchaser**

* * *

The above Order comprise the entire agreement affecting the purchase and no other agreement or understanding of any nature concerning same has been made or entered into or will be recognized.

Following the bench trial, Ball submitted a post-trial brief in which he advanced the preclusion argument. While the trial court never expressly addressed the issue, it apparently overruled the argument because it awarded damages under the CSPA to Benjamin and Sarah Hamilton.

{¶ 42} Ball relies on *Tisdale v. Direct Detail*, 8th Dist. Cuyahoga No. 97503, 2012-Ohio-3252, ¶ 14, for the proposition that an "as is" express disclaimer of warranties precludes a consumer from asserting a CSPA claim based on undisclosed defects in a car. The plaintiff in *Tisdale* bought a used 1997 Oldsmobile Regency from the defendant, Direct Detail. *Tisdale* at ¶ 2. Prior to the sale, a Direct Detail sales associate allegedly told the plaintiff "he would not need a warranty because the car was in excellent condition." *Id.* at ¶ 3. On the very day that the

plaintiff purchased the vehicle, he began to experience problems with it. *Id*. at ¶¶ 5-6. Eventually, the plaintiff sued Direct Detail, "alleging that [Direct Detail] had failed to disclose and remedy the significant defects with the vehicle, in violation of Ohio's Consumer Sales Practices Act." *Id*. at ¶ 7.

{¶ 43} Direct Detail moved for summary judgment, and argued that the plaintiff "had purchased the vehicle 'as is' without any warranties and, therefore, they could not be held liable for failing to disclose or repair any defects in the vehicle." *Id*. at ¶ 8. The plaintiff admitted that "he had inspected the car before buying it and that he purchased the vehicle 'as is,' without any warranties." *Id*. at ¶ 9. The trial court granted Direct Detail's motion for summary judgment and the plaintiff appealed. *Id*. at ¶ 10. On appeal, the Eighth District Court of Appeals upheld the trial court's grant of summary judgment in favor of Direct Detail. The appellate court explained:

> Here, Tisdale alleged that he was deceived by appellees' failure to disclose the
> significant defects with the car before he purchased it and to fix the problems with
> the car after he bought it. But he admitted that he signed an "As Is" Warranty
> Disclaimer form, which very specifically stated that he was buying the car "as is"
> and that he would be responsible for the cost of repairing any problems or defects
> that existed at the time he bought the car or that occurred after its purchase. In
> addition, the Buyer's Guide executed by Tisdale also indicates that the vehicle
> was purchased "as is" without any warranty.

> These documents, along with the Bill of Sale and Retail Installment Agreement,
> constitute the final, written agreement of the parties. Accordingly, evidence of
> any alleged oral representations by appellees that would vary the terms of the

contract is barred. *Ed Schory & Sons* at 440, 662 N.E.2d 1074; R.C. 1302.05.

Furthermore, Tisdale produced no written document to vary the terms of the "As

Is" Warranty Disclaimer. Therefore, as a matter of law, [Direct Detail] cannot be

held liable under R.C. 1345.02 and 1345.03 for failing to disclose and repair any

defects in the car. * * * Accordingly, we find that the trial court did not err in

granting [Direct Detail's] motion for summary judgment.

*Id*. at ¶¶ 13-14.

{¶ 44} In contrast to the *Tisdale* decision, the Sixth District Court of Appeals has held

that a consumer's purchase of a used motorcycle without warranty did not preclude a claim that

the dealer violated the CSPA by allegedly representing that the motorcycle was reliable,

dependable, and free of defects. *Keel v. Toledo Harley-Davidson/Buell*, 184 Ohio App.3d 348,

2009-Ohio-5190, 920 N.E.2d 1041, ¶¶ 13-19 (6th Dist.). In *Keel*, the plaintiff purchased a used

2007 Harley-Davidson motorcycle from the defendant, Toledo Harley-Davidson/Buell. *Id*. at ¶

2. The plaintiff allegedly purchased the motorcycle in reliance upon representations made by the

defendant that the motorcycle was "reliable, dependable, and had no defects." *Id*. at ¶ 13. After

owning the motorcycle for 19 days, the plaintiff returned it to the defendant and complained that

the engine was making a ticking noise. *Id*. at ¶ 2. After several attempts by the defendant to fix

the ticking noise failed, plaintiff took the motorcycle to another mechanic and was informed that

the engine had a major defect. *Id*. The plaintiff filed suit against the defendant, alleging inter

alia, that by making representations relative to the motorcycle's performance, characteristics and

reliability, defendant had knowingly committed unfair, deceptive, and unconscionable acts and

practices in violation of R.C. 1345.02 and 1345.03. *Id*. at ¶ 13.

{¶ 45} The defendant moved for summary judgment, and argued that because the plaintiff purchased the motorcycle without any warranties, he could not prevail on his CSPA claim. *Id*. at ¶ 16. The trial court granted defendant's summary judgment motion with regards to the CSPA claim, noting in its judgment entry that despite the inclusion of an "as is" clause in the retail order, plaintiff decided to purchase the motorcycle anyway. *Id*. The plaintiff appealed. On appeal, the Sixth District Court of Appeals reversed the trial court's grant of summary judgment in favor of defendant. *Id*. at ¶ 19. The appellate court reasoned that "as is" warranty disclaimers act to bar contract and warranty claims, not claims under the CSPA. *Id*. at ¶¶ 17-18, citing *Fletcher v. Don Foss of Cleveland, Inc.*, 90 Ohio App.3d 82, 88, 628 N.E.2d 60 (8th Dist.1990), and *Gallagher*, supra, 2007-Ohio-6615.

{¶ 46} Similar to the facts at hand, and to the facts of *Tisdale* and *Keel*, the *Gallagher* case involves the purchase of a used vehicle with an "as is" clause. Specifically, the plaintiff in *Gallagher* purchased a used van with a wheelchair lift. *Gallagher* at ¶ 1. The purchase documents contained an "as is" warranty disclaimer. *Id*. According to the plaintiff, the dealer represented that the vehicle was "safe" to lift his wife. *Id*. However, the lift malfunctioned, nearly causing injury to the plaintiff's wife. *Id*. On appeal, the Ninth District Court of Appeals reversed the trial court's award of summary judgment in favor of the dealer on the plaintiff's CSPA claims. *Id*. The appellate court reasoned that the "as is" clause acted to preclude contract and warranty claims, not claims brought under the CSPA. *Id*. at ¶ 24.

{¶ 47} After careful consideration, we find that the *Keel* and *Gallagher* decisions contain the correct pronouncement of law. In particular, we find persuasive the rationale that "as is" warranty disclaimers are a creature of contract law. While an "as is" clause may be effective in defending a breach of contract or warranty claim, it does not have a similar effect on CSPA

claims, which are a creature of statutory law. Accordingly, we overrule Ball's first cross-assignment of error, and conclude that an "as is" warranty disclaimer does not preclude relief under the CSPA where a supplier has failed to disclose a defect in a vehicle, or has misrepresented the quality of the vehicle.

2.      Whether Ball's Actions Constitute a Violation of the CSPA, a Single Violation of the CSPA, or Multiple Violations of the CSPA

{¶ 48} In his second cross-assignment of error, Ball contends that even if the CSPA claims are not precluded by the "as is" clause, the trial court nonetheless erred in determining that he committed a violation of the CSPA. Specifically, Ball argues that his representation that the vehicle was in "good condition" had a basis in fact, and thus, was not a deceptive act or practice. On the other hand, the Hamiltons contend in their third assignment of error, that not only did Ball violate the CSPA, but that he committed multiple violations of the CSPA. They argue that the trial court erred in failing to find multiple violations of CSPA when they informed the court of numerous cases listed in the OPIF that Ball allegedly violated.

{¶ 49} Following the bench trial, the Hamiltons submitted a post-trial brief listing numerous OPIF cases that Ball had allegedly violated. In its decision and judgment entry, the trial court noted that: "The Plaintiffs have offered numerous OPIF cases to justify the Defendant's liability. These cases establish the liability of the Defendant under the CSPA." The trial court continued, however, that: "In this case the Defendant only committed a single violation of the CSPA instead of multiple violations. * * * There is no discernible difference between each of the Plaintiffs' alleged violations of the CSPA." Finally, the trial court determined that Ball violated R.C. 1345.02 because his statement that the car was in good

condition created in the Hamiltons' minds a belief that was not in accord with the facts. The trial court, however, specifically determined that Ball did not violate R.C. 1345.03, because it was not established that Ball knowingly committed an unconscionable act.

{¶ 50} After reviewing the OPIF cases cited by the Hamiltons in their post-trial brief, we agree that the cases establish that Ball committed a violation of the CSPA. We also agree with the trial court, however, that each of the cited cases are substantially similar, and in effect, establish only a single violation of the CSPA: that being the failure to disclose the reported unibody damage. Put another way, the OPIF cases cited by the Hamiltons establish a single CSPA violation, albeit, in slightly different terms. Accordingly, the Hamiltons' third assignment of error is overruled.

{¶ 51} By acknowledging that a violation of CSPA occurred, we are in effect overruling Ball's second cross-assignment of error. In furtherance of his second cross-assignment of error, Ball argues that there is no credible evidence to support the trial court's finding that his representation that the Torrent was in good condition was a deceptive statement. In particular, Ball argues that the Torrent is in fact in good condition; and thus his statement cannot create a belief in the minds of the Hamiltons which is not in accord with the facts. We disagree.

{¶ 52} Greg Chesko of Manheim testified at trial that the Torrent was determined by a Manheim mechanic to have unibody damage – specifically to the right front apron of the vehicle. Chesko further testified that such condition was announced at auction, and that such announcement likely had the effect of reducing the value of the Torrent by $1,500 - $2,000 as compared to an undamaged Torrent. The trial court determined that Ball was put on constructive notice of the unibody damage. Moreover, Sarah Hamilton testified that she believed she was

receiving a vehicle without any unibody damage, and that she was very upset by the value

assigned to the vehicle by the Columbus dealership.  Similarly, Benjamin Hamilton testified that

he believed he was purchasing a good vehicle for his family, that he was "extremely shocked"

when he received the trade-in value for the Torrent, and that he no longer trusts that the vehicle

is safe.  In short, the trial court's determination that Ball's representations were deceptive was

not against the manifest weight of the evidence.  Ball's second cross-assignment of error is

overruled.

> 3.     Whether the Hamiltons Are Entitled to CSPA Damages for Ball's Failure to
> Register a Fictitious Name with the Ohio Secretary of State

{¶ 53}  In their fourth assignment of error, the Hamiltons contend that the trial court

erred by failing to award them damages for Ball's failure to register the fictitious name, BP Auto

Sales, with the Ohio Secretary of State.

{¶ 54}  In its decision and judgment entry, the trial court noted the following:

> Many courts have held that a failure to comply with [the statutory provision
>
> requiring businesses to register a fictitious name with the secretary of state] is a
>
> CSPA violation.  *Foster v. D.B.S. Collection Agency* (2006), 463 F. Supp. 2d 783.
>
> However, the Plaintiffs have failed to establish that the Defendant's non-
>
> compliance with fictitious name registration requirements impaired their ability to
>
> gain redress under CSPA.  *Mannix v. DCB Service, Inc.* (2004), 2004 Ohio 6672.
>
> Only if the non-compliance were to show impairment to file suit would this
>
> violate the CSPA.

{¶ 55} We agree with the trial court that where a consumer's ability to seek redress for alleged violations of the CSPA is not damaged or prejudiced in any way by a supplier's failure to register a fictitious name; then the mere failure to register does not alone violate the CSPA. *Mannix v. DCB Service, Inc.*, 2d Dist. Montgomery No. 19910, 2004-Ohio-6672, ¶¶ 22-24 (OPIF #2336). Here, no evidence was adduced at trial that Ball's use of a fictitious name impaired the Hamiltons' ability to seek redress under the CSPA. To the contrary, the Hamiltons dealt exclusively with Ball in the purchase of the Torrent and knew that he was the owner of BP Auto Sales. Moreover, the Hamiltons called Ball on several occasions and even met in person with Ball in attempts to resolve this dispute before filing a lawsuit. Finally, the cases cited by the Hamiltons, *State ex rel. Celebrezze v. Llyod*, Franklin C.P. No. 82CV-06-3184, 1983 WL 197501 (May 26, 1983) (OPIF #5), and *State ex rel. Fisher v. Wilson*, Summit C.P. No. CV-91-10-3843 (May 4, 1992) (OPIF #1207), do not support their assertion that the mere failure to register a fictitious name is a violation of the CSPA. In *Lloyd*, the trial court specifically found that the defendant's failure to register the fictitious name placed an unfair burden on his customers who sought to pursue lawful remedies against his business; and thus, the failure to register was unfair and deceptive. *Llyod* at *1. *Wilson*, meanwhile, was resolved by a consent judgment entry, wherein the defendant admitted that the failure to register the fictitious name was a CSPA violation. Thus, the issue of impairment was never reached in the *Wilson* decision because the defendant admitted liability.

{¶ 56} Based on the foregoing, we cannot say that the trial court's findings in regards to the fictitious name issue were against the manifest weight of the evidence; or that the trial court incorrectly applied the law. Accordingly, the Hamiltons' fourth assignment of error is overruled.

4.    Whether Sarah Hamilton and Dallas Hamilton are "Consumers" as defined by the CSPA

{¶ 57} As mentioned above, the trial court awarded Benjamin Hamilton and Sarah Hamilton damages for Ball's violation of the CSPA. The trial court, however, determined that "no evidence [was] presented on behalf of Dallas Hamilton," and dismissed his CSPA claims. In their tenth assignment of error, the Hamiltons contend that the trial court erred in dismissing Dallas' claims. Ball, meanwhile, contends in his fourth cross-assignment of error that the trial court erred when it awarded damages under the CSPA to Sarah Hamilton because Sarah is allegedly not a "consumer" entitled to consumer protections.

{¶ 58} The parties agree that the transaction at issue is a "consumer transaction," that Ball is a "supplier," and that Benjamin Hamilton is a "consumer." *See* R.C. 1345.01 (A), (C), and (D). At issue, however, is whether Sarah and Dallas Hamilton are "consumers" entitled to the CSPA protections. The CSPA defines "consumer" as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). Non-consumers are not entitled to the protection of the CSPA. *D.A.N. Joint Venture III, LP v. Legg*, 5th Dist. Delaware No. 03CAE08039, 2004-Ohio-2805, ¶ 27.

{¶ 59} The trial evidence establishes that both Sarah and Benjamin Hamilton were present when the Torrent was purchased from BP Auto Sales. Both Benjamin and Sarah visually inspected the vehicle, test drove the vehicle, and were present when Ball made the statement that the vehicle was in good condition. Dallas Hamilton is a minor child and in no way participated in the purchase of the Torrent.

{¶ 60} Based on the foregoing, we find that credible evidence supports the trial court's judgment awarding CSPA damages to Sarah Hamilton. Sarah was present throughout the dealings with Ball and had major input in the Hamiltons' decision to purchase the Torrent. It is quite clear that she was "a person who engage[d] in a consumer transaction with a supplier," and thus, a "consumer" entitled to CSPA protections. Ball's argument that the "sales contract listed Benjamin Hamilton as the sole purchaser of the 2006 Torrent" misconstrues the law. The CSPA simply does not require a claimant to have privity of contract to bring a claim under the Act. Accordingly, Ball's fourth cross-assignment of error is overruled.

{¶ 61} With regards to the CSPA claims brought by Dallas Hamilton, we agree with the trial court's finding that no evidence supports the claims. All that was adduced at trial is that Dallas is a minor child, and that the Hamiltons bought the vehicle primarily for Sarah and his use. While Dallas may have been an intended beneficiary of the transaction, he was in no way "engaged" in a consumer transaction with a supplier. Thus, the trial court properly dismissed his CSPA claims. Accordingly, the Hamiltons' tenth assignment of error is overruled.

5.     Determination of Actual Economic CSPA Damages

{¶ 62} Both the Hamiltons' fifth assignment of error, and Ball's third cross-assignment of error allege that the trial court erred in its determination of damages. After the trial court determined that a CSPA violation occurred, it found that Benjamin and Sarah Hamilton were entitled to $1,249.98 in actual damages. The trial court then trebled those damages, for a total of $3,749.94. The $1,249.98 amount was purportedly reached by deducting Ball's total cost invested in the vehicle ($7,880 wholesale auction price + $325.02 for repairs), from the retail price paid by the Hamiltons ($9,500). However, such calculation actually equals $1,294.98,

trebled for a total of $3,884.94. Thus, we find that the trial court did err in its award of damages, albeit for reasons other than those assigned by the parties.

{¶ 63}     Under the CSPA, enhanced damages are to be assessed against a supplier for a violation that has been previously declared deceptive or unconscionable by an administrative rule or by any Ohio court if the attorney general's office has made the prior court decision available in OPIF. R.C. 1345.09(B). In such a case, "the consumer may rescind the transaction or recover * * * three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages[.]" *Id.* " '[A]ctual economic damages' means damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345. of the Revised Code and does not include damages for noneconomic loss as defined in section 2315.18 of the Revised Code." R.C. 1345.09(G).

{¶ 64}     The Hamiltons contend that the trial court erred by not awarding damages equal to "the sum of the entire purchase price; tax paid; charges and fees paid; interest paid; and title fees." Ball, on the other hand, contends that the Hamiltons suffered no actual economic damages, and thus they are entitled to only $200 in statutory damages. Alternatively, Ball contends that even if actual economic damages exist, such damages should not be trebled because he alleges that none of the OPIF cases cited by the Hamiltons established that a failure to disclose unibody damage was a violation of the CSPA.

{¶ 65}  First, with respect to the Hamiltons' assignment of error, it has recently been established that "[a]ctual damages [under the CSPA] do not equate to the contract price, especially where the seller has fully performed, albeit unsatisfactorily." *Garber,* 2013-Ohio-

2700, 991 N.E.2d 1225 at ¶ 21.  Thus, the trial court did not err in failing to award three times the contract price as damages.

{¶ 66}  In his cross-assignment of error, Ball essentially contends that the trial court used an incorrect method of calculating damages.  Instead of deducting the wholesale price and costs from the retail price, as the trial court did here, Ball alleges that the proper method of determining damages is to calculate the difference between the price paid and the retail price. Ball further alleges, that since Greg Chesko testified that the price paid for the Torrent by the Hamiltons was equal to its retail value - even considering the unibody damage – then the Hamiltons suffered no actual economic damages and are entitled to only $200 in statutory damages.

{¶ 67}  We disagree that the trial court's method for determining damages was incorrect. Furthermore, it does not matter that the method of determining the damages may have differed from a method we may have used, or for that matter, a method that Ball may have used.  *See Amsbary v. Brumfield,* 177 Ohio App.3d 121, 2008–Ohio–3183, 894 N.E.2d 71, ¶ 11 (4th Dist.) (Noting that under the manifest weight standard of review, we must not decide whether we would have come to the same conclusion as the trial court.  Instead, we must uphold the judgment so long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions."); *see also Rose Chevrolet, Inc.*, 1993 WL 229392 at *2 (noting that trial courts in Ohio have broad discretion when determining relief under the CSPA). The trial court's method for determining actual economic damages was supported by some competent, credible evidence.

{¶ 68} Moreover, Ball's argument that the trial court erred by tripling the damages is also misplaced. As stated above, the OPIF cases cited by the Hamiltons clearly established that the failure to disclose damage to a vehicle is a deceptive act, and the cases should have put Ball on notice of such fact. Consequently, under the express terms of R.C. 1345.09(B), the trial court was required to triple the actual economic damages awarded.

{¶ 69} Nonetheless, while the evidence supports the trial court's methodology for calculating damages, its actual calculation is incorrect. Deducting Ball's total cost invested in the vehicle ($7,880 wholesale auction price + $325.02 for repairs) from the retail price paid by the Hamiltons ($9,500) equals $1,294.98; not the $1,249.98 amount reached by the trial court. The $1,294.98 actual economic damages should then be trebled, for a total award of $3,884.94. Thus, we sustain the Hamiltons' fifth assignment of error and Ball's third cross-assignment of error, to the extent that they generally contend that the trial court erred in determining the amount of damages owed the Hamiltons.

6.      Noneconomic Damages Under the CSPA

{¶ 70} In their sixth assignment of error, the Hamiltons contend that the trial court erred by failing to award each of them noneconomic damages. In its decision and judgment entry, the trial court stated that "[n]o punitive or noneconomic damages are awarded[,]" but offered no explanation in support of its finding.

{¶ 71} As noted above, R.C. 1345.09(B) permits a trial court to award, in addition to any actual economic damages or statutory damages, noneconomic damages not to exceed $5,000. Noneconomic damages have been awarded under the CSPA and comparable federal consumer protection laws for inconvenience, aggravation, frustration, humiliation, and mental distress

caused by violations of the Act. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶¶ 20-21.

{¶ 72} We have already determined that Dallas Hamilton is not a "consumer," and thus, is not entitled to the protections of the CSPA. It follows, that Dallas Hamilton is not entitled to noneconomic damages under the Act. With respect to Benjamin and Sarah Hamilton, evidence in the record exists to support the trial court's finding that they are not entitled to noneconomic damages.

{¶ 73} Sarah Hamilton testified that she was "very upset," "almost in tears upset," when she learned of the unibody damage. She further testified that she no longer drives the vehicle, except in very rare circumstances, and that she relies on other people to transport her and her son. Benjamin Hamilton also testified that he was "extremely shocked" and "very unhappy" to learn of the unibody damage, and that he did not feel that the vehicle was safe to transport his wife and son. However, the Hamiltons also testified that after learning of the unibody damage, they never took the vehicle to a mechanic to determine if it was unsafe to drive. Further, neither Benjamin nor Sarah were aware of the specific damage to the unibody.

{¶ 74} Given the conflicting testimony, the trial court was free to determine that any inconvenience or mental distress alleged by the Hamiltons was not a result of Ball's failure to disclose the unibody damage; but rather a result of the Hamiltons' own opinions regarding the safety of the vehicle. And under the applicable standard of review, "we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. This means that the trier of fact is free to believe all, part, or none of

the testimony of any witness who appears before it." *Khayyam Publishing Co. v. Marzvann*, 4th

Dist. Athens No. 12CA29, 2013-Ohio-5332, ¶ 24. Accordingly, the trial court's determination is

not against the manifest weight of the evidence and the Hamiltons' sixth assignment of error is

overruled.

7.       Attorney's Fees Under the CSPA

{¶ 75} In their ninth assignment of error, the Hamiltons contend that the trial court erred

by reducing their lawyer's hourly rate when determining the attorney fee award. In contrast, Ball

contends in his fifth cross-assignment of error that the trial court erred in awarding attorney's

fees because he did not knowingly commit the CSPA violation. Alternatively, Ball argues that

even if attorney's fees are warranted, such fees should be limited to the time spent litigating the

CSPA claims, since the Hamiltons did not prevail on their non-CSPA claims. [4]

{¶ 76} The trial court did not hold a hearing on the issue of attorney's fees. Rather, the

Hamiltons submitted a motion for attorney's fees and costs in which they requested the trial

court to award them $34,041.50 in attorney's fees. Attached in support of the motion was the

affidavit of the Hamiltons' trial attorney, in which the attorney testified that his billing rate was

$225 per hour; and that the billing rates of the legal assistants and paralegals that worked on the

lawsuit ranged from $95 to $130 per hour.

{¶ 77} In its decision and judgment entry, the trial court determined that an attorney fee

award of $10,126.50 was reasonable. The trial court explained:

---

[4] Ball's other arguments in support of his fifth cross-assignment of error – that Sarah Hamilton was not a
"consumer" entitled to attorney's fees and that Benjamin Hamilton's CSPA claims were barred as a matter of law –
are moot given our prior discussion.

Prior case law has established an hourly rate of $100 was reasonable for consumer

fraud legal services. The Court awards Seif & Shugart, Inc. the amount of

$10,126.50 in attorney fees. This represents $100 per hour for Attorney Jason

Shugart for 60 hours and $35 per hour for Paralegal Marius Irimies for 117.9

hours.

{¶ 78} "[W]e review a trial court's decision on a motion for attorney fees in a case involving the Consumer Sales Practices Act for an abuse of discretion." *Friend v. Elsea, Inc.*, 4th Dist. Pickaway No. 98CA29, 2000 WL 1468499, *4 (Sept. 26, 2000), citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court and we are guided by the presumption that the findings of the trial court are correct." *Friend* at *4, citing *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

{¶ 79} Pursuant to the CSPA a trial court may award a prevailing consumer reasonable attorney's fees, limited to the work reasonably performed, when the supplier in a consumer transaction knowingly committed an act or practice that violates the Act. R.C. 1345.09(F)(2). "Knowingly" committing an act or practice in violation of CSPA means that " 'the supplier need only intentionally do the act that violates the Consumer Sales Practices Act. The supplier does not have to know that his conduct violates the law for the court to grant attorney fees.' " *Friend* at *4, quoting *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 30, 548 N.E.2d 933 (1990).

{¶ 80} As set forth by the Supreme Court of Ohio:

When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B)[5]. These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation.

*Bittner* at 145-146.

{¶ 81} Furthermore, fees at a lower rate may be recovered for work done by law clerks, legal interns, and paralegals. *See Non-Employees of Chateau Estates Resident Ass'n v. Chateau Estates, Ltd.*, 2nd Dist. Clark Nos. 2004CA19, 2004CA20, 2004-Ohio-3781, ¶ 33; *Jackson v. Brown*, 83 Ohio App.3d 230, 232, 614 N.E.2d 847 (8th Dist.1992); *Jarmon v. Friendship Auto Sales Co., Inc.*, 8th Dist. Cuyahoga No. 86589, 2006-Ohio-1587, ¶ 10. Moreover, where "claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner*, 58 Ohio St.3d at 145, 569 N.E.2d 464. However, "where claims present[] a common core of facts and related legal theories, and where those

---

[5] The language of DR 2–106(B) was adopted by, and is now contained in, Prof.Cond.R. 1.5.

different theories of recovery are not severable, it is permissible for the trial court to treat the total number of hours expended on all claims as reasonably expended hours." *Kinder v. Smith*, 12th Dist. Warren No. CA2012-05-046, 2013-Ohio-2157, ¶ 19, citing *Moore v. Vandermark Co.*, 12th Dist. Clermont No. CA2003-07-063, 2004-Ohio-4313, ¶ 29.

{¶ 82} Ball's argument that the trial court erred in awarding attorney's fees because he did not "knowingly" violate the CSPA is misplaced. As stated above, so long as a supplier intentionally commits the act that is in violation of the CSPA, his or her knowledge of the wrongdoing is irrelevant. Here, it is undisputed that Ball sold the Torrent to the Hamiltons without disclosing the unibody damage. The fact that he was only on "constructive notice" of the unibody damage, as compared to having "actual knowledge" of the damage, is not relevant to the issue of attorney's fees.

{¶ 83} Ball's alternative argument that the trial court erred in awarding attorney's fees for the prosecution of the entire case, as opposed to limiting the fee award to the time spent litigating the CSPA claims, is also without merit. First, the claims at issue in this case are factually and legally related to one another. Thus, it would not have been an abuse of discretion for the trial court to treat the total number of hours expended on all claims as reasonably expended hours. Furthermore, it appears that the trial court did reduce the fee hours rewarded. In the affidavit attached to the Hamiltons' motion for attorney's fees, the Hamiltons trial counsel attested that he spent 80.4 hours litigating the case, and that his support staff spent an additional 124.4 hours. However, in its judgment, the trial court only awarded fees for 60 attorney hours, and 117.9 paralegal hours. Thus, it appears that the trial court may have accounted for the fact that not all of the time spent litigating the case was attributable to the CSPA claims.

{¶ 84} With respect to the Hamiltons' assignment of error, we are unable to conclude that the trial court abused its discretion by awarding fees in an amount less than that requested by the Hamiltons. The only evidence in support of the reasonableness of the $225 hourly rate was the affidavit of the trial attorney. No other corroborating evidence was presented to establish that $225 per hour is a reasonable and customary fee charged for similar legal services in the locality. Furthermore, it is not as if the trial court arbitrarily picked the $100 per hour rate, as the Hamiltons would suggest. Rather, the trial court relied upon established case law to aid in its determination of a reasonable rate under the circumstances. Moreover, the trial court judge who presided over all of the proceedings below was in the best position to review and assess the value of the attorney's services. *See Bittner* at 146 ("The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.") Put simply, the trial court's actions were not unreasonable, arbitrary, nor unconscionable. Accordingly, the Hamiltons' ninth assignment of error is overruled.

## IV.    Conclusion

{¶ 85} Having determined that the trial court erred in its actual mathematical calculation of damages, we hereby modify the trial court's judgment pursuant to App.R. 12(A)(1)(a) to reflect actual economic damages of $1,294.98. Furthermore, these damages are to be trebled pursuant to R.C. 1345.09(B) for a total award of $3,884.94. As modified, the judgment is hereby affirmed.

JUDGMENT AFFIRMED AS MODIFIED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED AS MODIFIED. Appellants/cross-appellees and appellee/cross-appellant shall split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment and Opinion.

For the Court

By:
Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.