**[Cite as *Tewksbury v. Tewksbury*, 194 Ohio App.3d 603, 2011-Ohio-3358.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

TEWKSBURY, ADMR., ET AL.,      :

                             :

      Appellants and           :    Case No.   10CA810
      Cross-Appellees,       :

                             :

      v.                      :
TEWKSBURY ET AL.,         :    DECISION AND JUDGMENT ENTRY

                             :

      Appellees and          :
      Cross-Appellants.      :

_____

APPEARANCES:

Joseph P. Sulzer, for appellants and cross-appellees.

Marie Moraleja Hoover, for appellees and cross-appellants.

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 6-27-11

ABELE, Judge.

{¶ 1}   This is an appeal from a Pike County Common Pleas Court judgment. Harley Tewksbury Jr., the administrator of the estate of Howard E. Tewksbury Sr., together with a number of decedent's heirs, plaintiffs below and appellants-cross-appellees ("appellant") herein, assign the following errors for review:

FIRST ASSIGNMENT OF ERROR:

The trial court erred to the detriment of the appellants by holding the appellants lacked standing to bring a cause of action herein.

SECOND ASSIGNMENT OF ERROR:

The trial court erred to the detriment of appellants by holding decedents's power of attorney to be valid.

{¶ 2} Howard E. Tewksbury Jr. and other heirs of the decedent, defendants below and appellees-cross-appellants ("appellee") herein, posit the following cross-assignment of error:

The trial court erred when it determined that certain property transfers were void under the issue of self-dealing when the attorney-in-fact was affirmatively directed by the decedent to act.

{¶ 3} Less than three weeks before his death, the decedent executed a power of attorney that named one of his sons, appellee Howard Tewksbury Jr., as his attorney in fact. Appellee used that power of attorney to transfer a number of his father's assets to himself. The decedent died intestate on October 23, 1999. Subsequently, the probate court appointed another of his sons, appellant Harley Tewksbury, to administer the estate.

{¶ 4} It is a bit unclear when the decedent's estate was opened in Pike County Probate Court, but in 2005, the complaint at the heart of this matter was transferred from the probate division to the Pike County Common Pleas Court General Division. Appellants requested that the transfers that appellee made under the power of attorney be voided and that the assets be returned to the decedent's estate. Appellee denied liability.

{¶ 5} The matter proceeded to a bench trial over several days in the summer of 2008. After two days of testimony, a very disturbing picture emerged concerning the living conditions

endured by an elderly, infirm stroke-victim during the last few months of his life. The record reveals that the decedent slept on a couch in his home, which he repeatedly soiled and which was rarely, if ever, cleaned. Several witnesses testified that the entire house was filthy and smelled of urine, as did the decedent. Although several witnesses testified that they brought food to the decedent, he rarely ate and was apparently not given his medication. One son with whom the decedent lived, Charles Causey, was described as dragging his father to the bathroom on occasion.

{¶ 6} Regarding the use of the power of attorney to transfer assets to the appellee, there is no dispute that the decedent had interests in three parcels of real estate: (1) the farm on which he lived, (2) the "John Lee" property, and (3) the "Nell Lee" property. Sometime prior to his stroke, appellant transferred both the farm and the "Nell Lee" property to himself and to Charles Causey, for life, with the remainder to the survivor of them.[1]

{¶ 7} As his father's attorney in fact, appellee proceeded to transfer his father's interests in those parcels to himself. Appellee also transferred the "John Lee" property to his name as well and liquidated several certificates of deposit that belonged to his father and placed the proceeds in his own account.[2]

{¶ 8} One of the contested points during the trial court proceedings was the appellee's motivation for the transfers. Brett Clark, appellee's former son-in-law and later brother-in-law, testified that the appellee simply wanted all the assets of his father's estate for himself. Clark related that with respect to the appellee's siblings, he had stated, "Screw the rest of them."[3]

---

[1] The consensus was that Causey (or "Chuckie," as a few witnesses referred to him) was also the decedent's son.

[2] Appellee stated that he used the money, in part, to pay expenses at his farm and to pay off his mortgage.

[3] The witness was first married to Sheila Tewksbury, who was alternately described as the appellee's

{¶ 9}  By contrast, Anthony Moraleja, the attorney who prepared some of the legal documents involved in this matter, testified that the decedent had asked him whether the power of attorney would allow the appellee to transfer the property.  As for Causey, Betty Tewksbury, the appellee's wife, testified that her father-in-law described this other son as having gone "dirty on" him.[4]

{¶ 10} The trial court issued its decision and judgment on May 12, 2009.  Because the decedent and Causey held several parcels of real property as joint tenants with survivorship rights, and because the decedent's certificates of deposit were "payable on death" to Causey, the trial court reasoned that appellants had no standing to challenge those transfers.  The court noted that even if those transfers were set aside, the assets would go to Causey, not to the estate.  Thus, Causey, who was not a party to this action, was the only party with standing to challenge the asset transfer.

{¶ 11} On March 10, 2010, the trial court issued another judgment that involved the transfer of the "John Lee" property to appellant under the power of attorney.  The trial court found that the decedent was competent at the time he executed the instrument, and thus, the power of attorney was valid.  The court further ruled, however, that the transfer of the property constituted "self-dealing" and is void as a matter of law.  See *Montgomery v. Mosley* (Aug. 24, 1990), Pike App. No. 448.  The court thus ordered that the "John Lee" property be returned to the decedent's estate.  Appellant requested findings of fact and conclusions of law, which the

daughter (or the girl he raised), and later married Cheryl Clark (his first wife's aunt) and a sister to the appellee.

[4]  There is little dispute that Charles Causey resided at the decedent's home during the last few months of his life and had intended to take care of him.

trial court soon filed, and this appeal followed.[5]

I

{¶ 12} In their first assignment of error, appellants assert that the trial court erred by dismissing a portion of their claims due to the lack of standing.

{¶ 13} Generally, Ohio courts do not issue advisory opinions. Rather, courts will rule in a matter when an actual "case or controversy" exists. To show a "case or controversy," litigants must be able to establish proper "standing." In other words, litigants must be in a position to sustain either a direct benefit or injury from the resolution of the case. See, e.g., *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312, 324, 712 N.E.2d 1258; *Lager v. Plough*, Portage App. No. 2006-P-0013, 2006-Ohio-2772 at ¶ 7.

{¶ 14} In the case sub judice, we agree with the trial court's reasoning that no "case or controversy" existed concerning appellee's transfer of his father's interest in the farm, the transfer of the "Nell Lee" property, and the transfer of several certificates of deposit. The uncontroverted evidence established that these parcels were owned jointly by decedent and Charles Causey, with the remainder to the survivor. The certificates of deposit, prior to the appellee's transfer pursuant to the power of attorney, were payable on death to Causey as well. In short, these items are all nonprobate assets.

{¶ 15} As the trial court aptly noted, even if the transfers are voided, the assets would not return to the estate, but rather to Charles Causey.[6] The decedent's estate would not benefit.

---

[5] When a trial court is requested to issue findings of fact and conclusions of law, those findings and conclusions constitute the final, appealable orders. *Pressley v. Cottrill*, Muskingum App. No. CT2009-0005, 2009-Ohio-2017, at ¶ 21; *Positron Energy Resources, Inc. v. Weckbacher*, Washington App. No. 07CA59, 2009-Ohio-1208, at ¶ 13, fn. 3.

[6] Causey is not a party in the case sub judice. When questioned why he did not pursue a claim against his "brother" for the property, Causey basically stated that he had no interest in the money.

Similarly, the estate is not injured by allowing those transfers to stand. Those assets would not have been part of the estate.

{¶ 16} Accordingly, we hereby overrule appellants' first assignment of error.

II

{¶ 17} In their second assignment of error, appellants assert that the trial court erred by finding the power of attorney to be valid.

{¶ 18} In the case sub judice, the power of attorney was executed on October 14, 1999, shortly before the decedent passed away. We readily concede that conflicting evidence exists as to the decedent's competence at the time he executed that instrument. For example, several of his children testified that his mental status had deteriorated to the point that he did not know them, that he did not appear to be aware of his surroundings, and that he did not respond to questions. In contrast, appellee testified that his father was alert and not confused. Attorney Moraleja testified that he first learned of the power of attorney from the decedent himself when he visited the decedent to obtain information about property descriptions for deeds. The decedent asked Moraleja whether the power of attorney was sufficient to affect the transfer of property and explained that he wanted his son to have that ability because, apparently, his other children did not visit him. Betty Tewksbury, appellee's wife, also related that her father-in-law wanted the appellee to have the property rather than Causey because Causey "went dirty."

{¶ 19} A decedent's competence at the time of the execution of a power of attorney is a factual issue that a trier of fact must determine. Appellate courts will not reverse a trial court's decision on that issue if some competent, credible evidence supports that conclusion. See *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; *C.E. Morris Co. v. Foley*

*Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This standard of review is highly deferential, and even "some" evidence is sufficient to support a trial court's judgment and prevent a reversal. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989; *Willman v. Cole*, Adams App. No. 01 CA725, 2002- Ohio-3596, at ¶ 24. The rationale for the deferential standard of review is that the trial court, as the trier of fact, is in the best position to view witnesses, to observe their demeanor, gestures, and voice inflections, and to use those observations to weigh witness credibility. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; *Jones v. Jones*, Athens App. No. 07CA25, 2008-Ohio-2476, at ¶ 18.

{¶ 20} Here, the testimony provided at the hearing from the appellee, his wife and attorney Moraleja all support the trial court's conclusion that the decedent was competent at the time he executed the power of attorney. Thus, competent, credible evidence supports the trial court's conclusion.

{¶ 21} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

### III

{¶ 22} In his cross-assignment of error, appellee argues that the trial court erred by voiding the transfer of the "John Lee" property on the basis of "self-dealing." We disagree with appellee.

{¶ 23} In *Montgomery,* Pike App. No. 448, 1990 WL 127047, this court held:

> A power of attorney is a form of agency. * * *An agent is always in a fiduciary relationship to his principal. * * * A fiduciary may not engage in self dealing with the subject matter of the estate *.* *. and any transaction which constitutes self dealing is voidable.

> A transfer by a fiduciary agent to himself .*.* *. violates the rule against self dealing. The question of bad faith never enters into it. Because of the potential for mischief, these kinds of transactions are simply barred as a matter of law.

(Citations omitted.)

{¶ 24} Whatever his motives, no question exists that the appellee transferred the "John Lee" property from his father to himself. This constitutes self-dealing and falls within the *Montgomery* prohibition.

{¶ 25} Appellee argues that we should make an exception in this case because his father apparently desired that those transfers be completed. He cites attorney Moraleja's testimony that he spoke with the decedent after the power of attorney had been executed and that the decedent had indicated that he wanted the appellee to transfer the properties to himself. We, however, are not persuaded.

{¶ 26} First, the appellee cites no authority to permit an agent to self-deal, even at the principal's direction. Second, self-dealing runs counter to the fiduciary duty that the attorney in fact owes to his principal. The proper method to carry out these transfers, if we assume for purposes of argument that the decedent, in fact, desired the transfer, is to appoint an attorney in fact who is completely disinterested in the transactions.

{¶ 27} Therefore, having reviewed all of the assignments of error and cross-assignments of error, and having found no merit in them, we hereby affirm the trial court's judgment.

Judgment affirmed.

HARSHA, P.J., and MCFARLAND, J., concur.