[Cite as *Johnson Invest. Group, L.L.C. v. Marcum*, 2013-Ohio-3175.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

JOHNSON INVESTMENT GROUP, LLC :

    Plaintiff-Appellee : C.A. CASE NO.   2012 CA 65

v. : T.C. NO.   CVF1100741

DONALD WAYNE MARCUM : (Civil appeal from
aka WAYNE MARCUM     Municipal Court)

    Defendant-Appellant :

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the    19th    day of    July   , 2013.

. . . . . . . . . .

DOUGLAS A. FANNIN, Atty. Reg. No. 0078826, 205 West Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

JOSEPH P. MOORE, Atty. Reg. No. 0014362, 262 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}** Donald Wayne Marcum appeals from a judgment of the Fairborn

Municipal Court, which found in favor of Johnson Investment Group, LLC, dba Fairborn Transmission Service, and against Marcum in the amount of $2,981.20, plus interest, for unpaid repairs to Marcum's truck. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} The trial court found the following facts, which are supported by the record:

{¶ 3} Robert Steven Johnson is the proprietor of Fairborn Transmission Service, which is owned by Johnson Investment Group, LLC. At all relevant times, Johnson owned 70% of Johnson Investment Group; his mother held the remaining 30% interest. Johnson is the only person at Fairborn Transmission Service who provides estimates for repairs and services to customers.

{¶ 4} In April 2010, Marcum was residing with Johnson's mother at her residence in Fairborn, Ohio. One day while Johnson was visiting his mother, Marcum inquired whether Johnson could perform some transmission work on his (Marcum's) 1999 Dodge Dually 4-wheel-drive diesel pickup truck. Marcum was concerned that his transmission was slipping in second gear. Marcum told Johnson that he had bought the truck new, that he was never getting rid of it, that he wanted the transmission rebuilt, and that he wanted the best transmission possible. Johnson discussed with Marcum the type of transmission that Marcum wanted, as the price could vary widely. After discussing the desired transmission, Johnson orally provided a quote of not more than $2,500, plus tax, for a heavy duty torque converter and a pipe pressure valve. Marcum agreed to this amount and the repairs.

{¶ 5} Marcum left the truck at Johnson's mother's home, where Johnson picked it

up and brought it to Fairborn Transmission Service for the repairs. After three days, Johnson returned the truck to his mother's house for Marcum. The total cost for the parts and labor was $2,396.45. With tax ($155.77), the total bill was $2552.22.

{¶ 6} The next time that Johnson and Marcum were both at Johnson's mother's house, Johnson told Marcum that the truck's old parts were at the shop for him if he wanted them. Johnson also mentioned that they could then take care of payment.[1] At that time, Marcum stated that he would like additional work done to the truck. After some discussion, the two agreed that the truck's differential lube would be changed and some hoses put on. Marcum was to provide his own lubricant, and Johnson quoted the price at $70 per hour for labor and $100 per hose. The total oral estimate was approximately $400 plus tax. Marcum agreed to the estimate and the work to be performed.

{¶ 7} Marcum again left his truck at Johnson's mother's residence. Johnson picked it up and took it to Fairborn Transmission Service. The repairs were made the same day, and Johnson returned the truck to his mother's house. The total cost for the parts and labor, with tax, was $428.98. When Johnson next saw Marcum, he told Marcum that the old truck parts were at the shop, where they could take care of payment. They discussed the method of payment, and Marcum indicated that he would pay in cash. Johnson agreed to this form of payment and gave Marcum some time to pay, as Johnson would incur processing charges if Marcum paid by credit card. Johnson subsequently mentioned to

---

[1] Johnson testified that customers typically receive written invoices for the repair work upon picking up their vehicles from the shop. However, Marcum did not receive a written invoice when the services were rendered, as he never came to the shop for his old parts or to make payment. Marcum first received written invoices from Fairborn Transmission Service in April 2011, a year after services were rendered, when Johnson sent them to Marcum by certified mail.

Marcum four to six times that he (Marcum) needed to pay for the repairs and services to the truck. Marcum consistently responded that he would pay as soon as he sold his home.

{¶ 8} On March 24, 2011, Johnson's mother passed away. A week later, Johnson received a telephone call from his sister and, as a result, went to his mother's residence and found Marcum moving out of the home. Johnson was concerned that Marcum was removing items belonging to his mother and called the Fairborn police. Johnson's sister also came to the residence.

{¶ 9} While in the presence of Sgt. Stannard of the Fairborn Police Department and his sister, Johnson requested payment from Marcum for the work on the truck. Johnson asked that he and Marcum go to the shop and that Marcum pay by credit card. Marcum acknowledged that he owed the money and that he would pay, but stated that he did not have the money. After this encounter, Johnson called Marcum a couple of times regarding payment and also asked a friend of Marcum to intervene.

{¶ 10} In April 2011, Johnson sent two invoices to Marcum from Fairborn Transmission Service for the work performed on Marcum's truck. Ultimately, in May 2011, Johnson Investment Group brought suit in the Fairborn Municipal Court, seeking payment for the repair work. Marcum denied the allegations, asserted several affirmative defenses, and alleged counterclaims under the Fair Debt Collection Practices Act and the Consumer Sales Practices Act.

{¶ 11} The matter proceeded to trial before a magistrate on December 16, 2011. Johnson, Sheila Johnson (Johnson's sister), and Sgt. Stannard testified for Johnson Investment Group regarding Marcum's agreement to pay for the repairs to his truck. Roger

Sheese, a mechanic and owner of Trans-Master Transmission in Franklin, Ohio, testified to the reasonableness of the charges for the work performed on Marcum's vehicle by Fairborn Transmission Services.

{¶ 12} At the beginning of his case-in-chief, Marcum orally moved to dismiss the action. He argued that Johnson Investment Group failed to establish that there was a contract between the parties, because there was no meeting of the minds regarding the price. Marcum further argued that Johnson Investment Group was not the real party in interest and lacked standing to pursue its claims, because all of the discussions occurred at Marcum's residence and were between Marcum and Johnson. The magistrate orally rejected Marcum's arguments and denied the motion to dismiss. Marcum then indicated that he would not be presenting any witnesses, and he voluntarily dismissed his counterclaims.

{¶ 13} On December 27, 2011, the magistrate issued a written decision finding in favor of Johnson Investment Group in the amount of $2981.20, with interest at a rate of 4%, plus costs. The magistrate found that Marcum and Johnson Investment Group had entered into a valid oral contract and that Johnson Investment Group was the proper plaintiff. Marcum filed objections to the magistrate's ruling, asserting that the magistrate erred in finding (1) that there was an oral contract, (2) that the repairs and services to the truck were not gifts, and (3) that Johnson Investment Group had standing and was the real party in interest. Marcum subsequently withdrew the second objection. A transcript of the trial was prepared and filed.

{¶ 14} On November 20, 2012, the trial court overruled Marcum's objections and entered judgment in favor of Johnson Investment Group in the amount of $2,981.20, with

interest at 4%, and court costs. Marcum appeals from the trial court's judgment, raising two assignments of error.

II.

{¶ 15} Marcum's assignments of error state:

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE IT UPHELD THE MAGISTRATE'S DECISION FINDING THAT APPELLEE HAD STANDING TO BRING THIS ACTION.

THE TRIAL COURT ERRED AS A MATTER OF LAW BY UPHOLDING THE MAGISTRATE'S DECISION WHEN BOTH THE TRIAL COURT AND THE MAGISTRATE HELD THAT AN ORAL CONTRACT EXISTED.

{¶ 16} Marcum claims that Johnson Investment Group lacked standing to pursue an action against him for the truck repair costs and that the trial court erred in finding that an oral contract existed between the parties.

{¶ 17} Standing is based upon the principle that "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). A party thus has standing when it has a personal stake in the outcome of a legal controversy with an adversary. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9.

{¶ 18} Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim. *Kincaid* at ¶ 9. Because standing is a jurisdictional

requirement, the complaint must be dismissed if standing is lacking. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 40. Moreover, because standing concerns the subject matter jurisdiction of the court, standing is an issue that cannot be waived and may be raised at any time, even after judgment. *BAC Home Loans Servicing LP v. Busby*, 2d Dist. Montgomery No. 25510, 2013-Ohio-1919, ¶ 19, citing *BAC Home Loans Servicing, L.P. v. Meister*, 11th Dist. Lake No. 2012-L-042, 2013-Ohio-873, ¶ 6. We review a trial court's ruling on standing de novo. *Id*., citing *Kincaid* at ¶ 9.

{¶ 19} Marcum claims that Johnson Investment Group lacks standing because any agreement concerning the work to Marcum's truck was with Johnson individually. Marcum emphasizes that all conversations pertaining to the repairs took place at Johnson's mother's home and that Johnson picked up Marcum's vehicle from Johnson's mother's residence and returned it there. Marcum also points to Johnson's testimony that Marcum said, "Of course I'll pay you, Steve," as evidence that Johnson agreed, in his individual capacity, to perform the repairs.

{¶ 20} Based on the record before us, we agree with the trial court's conclusion that Johnson Investment Group had standing to pursue its action against Marcum for the repairs and services to Marcum's truck. Johnson testified that Fairborn Transmission Service has been operating since 1968, when Johnson's father started the company. After Johnson's father died in 2002, Johnson Investment Group, LLC, was created. Johnson Investment Group owns Fairborn Transmission Service. Johnson is the majority owner of Johnson Investment Group, and he has operated the business since his father's death.

{¶ 21} Marcum approached Johnson both times about repairs and service to his truck. Johnson provided Marcum oral estimates (as was customary practice for service at Fairborn Transmission Service) with an indication that tax would also be collected. Although these conversations occurred at Johnson's mother's home, this is understandable given that Marcum lived with Johnson's mother. After Marcum agreed to the estimate and the work, the repairs and service were performed at Fairborn Transmission Service. Johnson subsequently informed Marcum that the old parts were at the repair shop and that he could come to the shop to settle the bill. The record thus reflects that Johnson was acting in his capacity as owner of Johnson Investment Group, dba Fairborn Transmission Service, when he agreed to perform repairs and service on Marcum's vehicle. There is no indication in the record that Marcum asked for the work to be performed personally by Johnson as a favor or gift, or that Johnson offered to do the work under those conditions. Accordingly, we conclude that the trial court did not err when it held that Johnson Investment Group was the proper party to pursue payment from Marcum for the services it rendered.

{¶ 22} The first assignment of error is overruled.

{¶ 23} The trial court also did not err in concluding that Marcum and Johnson Investment Group entered into oral contracts for the work on Marcum's truck.

{¶ 24} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414

(N.D.Ohio 1976); *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E .2d 134 (1991).

{¶ 25} Marcum claims that there was no meeting of the minds regarding the cost of repairs. However, Johnson testified that he provided Marcum an oral estimate of $2,500 plus tax for the work on Marcum's transmission, that the repair work was done, and that Marcum agreed to pay for the work. The total actual cost for the work was $2,552.22, including tax. Shortly thereafter, Marcum asked for additional work to be done to the truck. Johnson testified that he told Marcum that the cooler hoses were approximately $100 each and the labor would be $70 per hour. Johnson's total estimate was $400, plus tax. Johnson stated that the work was performed in a single day, and the actual cost for the work, including tax, was $428.98. Marcum agreed to pay for the work. Johnson's evidence established that the parties agreed that Fairborn Transmission Service would perform repairs and services to Marcum's truck, that Marcum agreed to the estimated prices, and that the work was performed as agreed. There was no evidence to the contrary. Accordingly, the trial court did not err in concluding that the parties had entered into a valid oral contract for the work to Marcum's truck.

{¶ 26} The second assignment of error is overruled.

III.

{¶ 27} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Douglas A. Fannin
Joseph P. Moore
Hon. Beth W. Root