[Cite as *Holiday Haven Members Assn. v. Paulson*, 2014-Ohio-3902.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

|  |  |  |
|---|---|---|
| HOLIDAY HAVEN MEMBERS, ASSOCIATION, INC. | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | Case No. 13CA13 |
| | : | |
| vs. | : | |
| | : | |
| KENNETH PAULSON, et al., | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendants-Appellees/ Cross-Appellants. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT/
  CROSS-APPELLEE:           Raymond R. Michalski,[1] 222 South Broad Street,
                                  Lancaster, Ohio 43130

COUNSEL FOR APPELLEES/
  CROSS-APPELLANTS:      James R. Kingsley, 157 West Main Street, Circleville, Ohio
                                  43113

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-8-14
ABELE, P.J.

{¶ 1}   This is an appeal and a cross-appeal from a Hocking County Common Pleas Court judgment in favor of Kenneth Paulson and Emily Paulson (Paulsons), defendants below and appellees herein, on the claims brought against them by the Holiday Haven Members Association, Inc. (Holiday Haven), plaintiff below and appellant herein.

---

[1]Attorney for appellant/cross-appellee, Raymond R. Michalski, was granted leave to withdraw as counsel on March 21, 2014, after the filing of appellate briefs.

{¶ 2} Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DECLARING THAT THE APPELLANT HAS NO STANDING AND IS NOT THE REAL PARTY IN INTEREST FOR THE ASSESSMENT AND COLLECTION OF COSTS FOR MAINTAINING THE PRIVATE ROADS IN THE SUBJECT SUBDIVISION OVER WHICH THE APPELLEES HAVE AN EASEMENT FOR INGRESS AND EGRESS."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DECLARING THAT THE APPELLEES ARE NOT LIABLE FOR THE PAYMENT OF ASSESSMENTS FOR THE COST OF MAINTAINING THE PRIVATE ROADS IN THE SUBJECT SUBDIVISION OVER WHICH THE APPELLEES HAVE AN EASEMENT FOR INGRESS AND EGRESS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DECLARING THAT THE APPELLANT HAS NO STANDING AND IS NOT THE REAL PARTY IN INTEREST FOR THE PURPOSE OF REVIEWING AND APPROVING OR DISAPPROVING PLANS AND SPECIFICATIONS FOR IMPROVEMENTS TO BE CONSTRUCTED ON LOTS IN THE SUBJECT SUBDIVISION."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DECLARING THAT THE APPELLEES ARE PERMITTED TO CONSTRUCT A RESIDENCE ON THEIR LOTS IN THE SUBJECT SUBDIVISION WITHOUT FIRST SUBMITTING THE PLANS AND SPECIFICATIONS FOR SUCH AN IMPROVEMENT TO APPELLANT FOR APPROVAL."

The Paulsons also assign the following the cross-assignment of error for consideration:

"DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT DID NOT QUIET TITLE?"

{¶ 3}    Various members of the Hines family owned acreage in Perry Township that they eventually transferred to Holiday Industries, Inc. (Holiday, Inc.), a corporation whose principal was Lawrence Hines (Hines).    Holiday, Inc. created Holiday Haven, a residential subdivision platted in separate stages during the 1960s and 1970s.    On November 9, 1973, Holiday Inc. filed a plat map for Holiday Haven No. 8 that contains the properties at the center of this dispute. That map contained the following deed restrictions for lots within the section:

"                        *                        *                        *

2.      No building shall be erected on any of said lots other than one singe family dwelling or cottage with garage without permission.

3.      No structure of a temporary nature, trailer, basement, tent, shack, garage, or other out-building shall be used on any lot at any time as a residence either temporary or permanent except by written permission of the sellers herein.

                        *                        *                        *

6.      No building shall be erected on any lot until the plans and specifications theretofore have been approved in writing by the sellers herein."

{¶ 4}    On November 23, 1972, the Paulsons acquired lot one-hundred eight (108) from Holiday, Inc.    Subsequently, Appellant Kenneth Paulson conveyed his one-half interest in that lot to his wife.    In 1985, Appellant Kenneth Paulson acquired lots one hundred four and one hundred five (104 & 105) from Holiday, Inc.

{¶ 5}    Although Hines, as principal for Holiday, Inc., initially maintained the properties including upkeep and the approval of building plans, the work eventually became overwhelming

and Hines encouraged the residents to form an association to take over for Holiday, Inc. As a result, Holiday Haven incorporated in 1994. Its bylaws provided, inter alia, that the Board of Trustees could (1) "enforce the covenants, conditions and restrictions applicable to the lots . . .," (2) "repair, maintain and improve the private roads" of the community," and (3) "levy and collect assessments" to pay for maintenance of those roads.

{¶ 6} On December 13, 1994, Holiday, Inc., by and through Hines, its president, transferred some property to the homeowners association. However, that transfer did not include Holiday Haven No. 8 where the Paulsons own three lots. Over the years, Holiday Haven grew to include fifty-five members. Also, at the time of the trial court proceedings some thirteen additional property owners who, although not actual members of the association, paid dues for road maintenance. The Paulsons are not members of Holiday Haven and they did not voluntarily donate to the homeowners association.

{¶ 7} At first, Holiday Haven did not bill the Paulsons for road maintenance under the belief they had no right to do so. Subsequently, on counsel's advice, they began to send invoices. The Paulsons, believing that they are not bound by covenants to which they did not agree, refused to pay Holiday Haven and did not seek approval for plans to build structures on lots 94 & 95.

{¶ 8} On April 6, 2011, Holiday Haven commenced the instant action and alleged, inter alia, that the Paulsons (1) are in default of payment of road maintenance fees, and (2) did not receive approval for construction on lots 94 & 95. Holiday Haven sought an injunction against further construction, as well as damages for unpaid road maintenance fees. The Paulsons denied liability and counterclaimed for quiet title to their premises. Holiday Haven denied liability

under the counterclaim.

{¶ 9}   At the February 11, 2013 trial to the court, the evidence showed that the Paulsons did not pay any assessments for road maintenance, nor did they seek approval for the construction of structures.   The trial court issued a detailed, twelve page opinion that ruled against Holiday Haven on its claims, and in favor of the Paulsons on the majority of their counterclaims.   First, the trial court concluded that Holiday Haven is not the real party in interest and has no standing to bring this action.   The court reasoned that no evidence shows that Holiday, Inc. transferred Holiday Haven No. 8 to the homeowners association.   Thus, Holiday, Inc. still owned the property and Holiday Haven lacked standing to enforce the plat restrictions. Moreover, even if it did have standing, the trial court found nothing in the plat restrictions to allow the homeowners association to assess road maintenance fees.   Further, the court found that the placement of a modular home did not violate the plat restrictions.   Finally, the court ruled that it would "quiet" the Paulsons' title as to "road assessments," but would not do so as to the "restrictions."[2]   This appeal followed.[3]

I

{¶ 10}  We begin by noting our agreement with the trial court that the "Declaration of Covenants, Conditions, and Restrictions" of the Holiday Haven Community" (Declaration) has no bearing on this action.   Mike Roth, Holiday Haven president at the time of the trial court

---

[2]  The trial court was unclear what it meant by "restrictions," but we presume it refers to those restrictions included in the 1973 plat map.

[3]  The trial court's June 4, 2013 judgment contained a "no just reason for delay" determination.   However, in light of the court's determination in the previous sentence that overruled all other claims or counterclaims not already decided, we are not sure why the court included this language in its judgment.

proceedings, conceded that the Paulsons were not a signatory to the Declaration, nor were they members of the homeowners association.

**{¶ 11}** A homeowners association agreement is, in essence, a contract. See *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012– 10–073, 2013-Ohio-2395, at ¶19; also see *Lisy v. Mayfair Estates Homeowners Assn.*, 9th Dist. Summit No. 25392, 2012-Ohio-68, at ¶29 (Dickinson, J., Concurring in Part). Also, a party must be a party to a contract to be bound by that contract. See, generally, *State v. Jackson*, 12th Dist. Butler No. CA2011–06–096, 2012-Ohio-4219, at ¶12 ("When a county prosecutor is not a party to a plea agreement, he or she is not bound by the terms of that agreement."); *N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.*, 8th Dist. No. 96376, 2011-Ohio-5179, at ¶17 ("***agreements to arbitrate are matters of contract, a person who was not a party to an arbitration agreement cannot be forced to arbitrate.").

**{¶ 12}** Because the Paulsons did not sign the Declaration, nor are they members of Holiday Haven, they cannot be held liable under the terms of the Declaration. Thus, we fully agree with the trial court that if the Paulsons could be liable to Holiday Haven, it must be under some actual servitude imposed on their land rather than the Declaration.

II

**{¶ 13}** We jointly consider Holiday Haven's first and third assignments of error that involve standing to bring the action. The homeowners association correctly states that our standard of review is de novo, but that is not because the remedy is a declaratory judgment (as Holiday Haven argues in its brief), but rather because a determination of standing is a question of law. See *HSBC Bank USA, Natl. Assn. v. Bailey*, 11th Dist. Trumbull No. 2012–T–0086,

2014-Ohio-246, at ¶43; *Bank of New York Mellon v. Blouse*, 12th Dist. Fayette No. CA2013–02–002, 2013-Ohio-4537, at ¶5; *Johnson Invest. Group, L.L.C. v. Marcum*, 2nd Dist. Greene No. 2012CA65, 2013-Ohio-3175, at ¶18.   De novo appellate review means that we afford no deference to a trial court's decision and, instead, conduct our own, independent review of the evidence.   See *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. Franklin No. No. 13AP–663, 2014-Ohio- 2540, at ¶8.   For the following reasons, we agree with the trial court's conclusion in this matter.

{¶ 14}  In the case at bar, it is clear that Holiday, Inc. platted Holiday Haven No. 8 and that Holiday, Inc. is the grantor of the Paulsons' three lots.   A plat map is one device used to create use restrictions on real estate. *Middle Road Developers, L.C. v. Windmiller Design and Development Co.*, 746 N.W.2d 279 (IA.App. 2008). The purpose of a plat is to facilitate the sale of property in accordance with the terms and conditions of that plat.   See *C & D Partnership v. City of Gahanna*, 10th Dist. Franklin No. 82AP-919, 1983 WL 3718 (Oct. 6, 1983) (Whiteside, J. Concurring).   As such, Holiday, Inc., or its successor-in-interest, is the only party that may enforce the covenant.   Here, the 1994 deed from Holiday, Inc. to Holiday Haven, as the trial court correctly notes, is insufficient to make the homeowner's association its successor-in-interest over Holiday Haven No. 8.   That deed transferred two tracts of land: the first in "Section 34" of "Township 13" and "Section 3" of "Township 12," and the second in "Section 3" of "Township 12."   The plat map shows that Holiday Haven No. 8 is in "Section 33" of "Township 13."   In short, the Paulsons' lots are not included in the 1994 deed and Holiday Haven is not a party with the requisite standing to enforce the plat restrictions.

{¶ 15}  Holiday Haven does not contest the fact that the 1994 deed did not cover the lots

at issue, but argues that the trial court improperly ignored two other documents.    The Paulsons answered on April 25, 2011 and raised the defense that Holiday Haven did not have standing to bring this action.    The next day, Hines, as the Holiday, Inc. president, executed a "Ratification And Reaffirmation of Assignment" (Ratification Agreement) that states, inter alia, that the 1994 deed "was intended not only to convey the real estate described therein but also to assign to the Association all of the rights and responsibilities of the grantor . . .under the subject covenants" of all eight sections of the subdivision.    Two days later, Hines filed an "Affidavit Of Facts" with the Hocking County Recorder and stated, in essence, the same information.

{¶ 16} In its June 4, 2013 decision and judgment, the trial court stated that it would "disregard" these two instruments and the case would be decided on the 1994 deed.    Holiday Haven argues that this constitutes error.    We, however, readily agree with the trial court.

{¶ 17} R.C. 5301.252(B) states the following with regard to an "affidavit of facts" filed with a county recorder:

> "(B) The affidavits provided for under this section may relate to the following matters:
>
> (1) Age, sex, birth, death, capacity, relationship, family history, heirship, names, identity of parties, marriage, residence, or service in the armed forces;
>
> (2) Possession;
>
> (3) The happening of any condition or event that may create or terminate an estate or interest;
>
> (4) The existence and location of monuments and physical boundaries, such as fences, streams, roads, and rights of way;
>
> (5) In an affidavit of a registered surveyor, facts reconciling conflicts and ambiguities in descriptions of land in recorded instruments."

Here, the "Affidavit of Facts" meets none of these criteria and Holiday Haven cites no authority to support the proposition that either of these documents should have been afforded any weight. We emphasize that neither the Ratification Agreement nor the Affidavit of Facts was filed to resolve some ambiguity in the conveyance. Instead, those filings added provisions to the 1994 deed that were not initially included. Generally, outside evidence cannot be introduced to contradict or change the meaning of a deed. *Robbins v. Cray*, 2nd Dist. Miami No. 345, 1935 WL 1930 (May 2, 1935). Moreover, even if that were not the case, this case was tried to the court. Thus, the trial court served as the trier of fact and issues of evidence weight and credibility are generally left to the trier of fact to decide. See *Grimes v. Grimes*, 2012-Ohio-3562, 975 N.E.2d 496, at ¶28 (4th Dist.); *Portco v. Eye Specialists, Inc.*, 177 Ohio App.3d 139, 2008-Ohio- 3154, 894 N.E.2d 84, at ¶17 (4th Dist.). Here, the trial court gave no credence to the self-serving Ratification Agreement or to the Affidavit of Facts, and we will not second-guess its decision.

{¶ 18} Finally, we note that a half century ago the Ohio Supreme Court spoke to the issue of standing to enforce a restrictive covenant on land. "If the restrictive covenant was enacted for the benefit of the one seeking to enforce it, he may do so, but the burden is upon him to show that such covenant restricting the use of the lands of another was intended to be for his benefit, and that he has an equitable interest in the other person's adherence to the covenant." (Emphasis added.) *Berger v. Van Sweringen Co.*, 6 Ohio St.2d 100, 102, 216 N.E.2d 54 (1966). This principle continues to be applied today. See e.g. *Baker v. Adams*, 3rd Dist. Logan No. 8-05-17, 2006-Ohio-3232, at ¶11. In the case sub judice, Holiday Haven has not, and cannot, satisfy this standard. The plat restrictions for Holiday Haven No. 8 were filed in 1973. Two decades later, the homeowners' association was formed. Holiday Haven cannot claim that it was the intended

beneficiary of the plat restrictions when it did not exist until twenty years later.

{¶ 19} Thus, for these reasons, we agree with the trial court that Holiday Haven lacked standing to enforce the plat restrictions. Accordingly, we find no merit to the first and third assignments of error and they are hereby overruled.

III

{¶ 20} In its second and fourth assignments of error, Holiday Haven aruges that the trial court erred by ruling that it could not (1) collect assessments from the Paulsons for road maintenance, and (2) require the Paulsons to submit building plans before they erect a structure on the properties. We realize that the trial court issued these rulings in the alternative, assuming that the homeowners association actually had standing. However, having ruled that the trial court correctly concluded that the homeowners association did not have standing to bring this action, any decision on these issues would amount to an advisory opinion. See, generally, *Tewksbury v. Tewksbury*, 194 Ohio App.3d 603, 2011-Ohio-3358, 957 N.E.2d 362, at ¶13; *Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 12CA1, 11CA19, 12CA6 & 11CA33, 2014-Ohio-2017, at ¶75. Therefore, we decline to pass on these questions and overrule the assignments of error as moot. See App.R. 12(A)(1)(c).

IV

{¶ 21} The Paulsons' cross-assignment of error asserts that although the trial court correctly granted the remedy of quiet title with regard to the road assessment bills, the court erred by not also granting quiet title with regard to the requirement that they seek approval for building plans.

{¶ 22} Quiet title rulings are reviewed under a manifest weight of the evidence standard.

See e.g. *Spurlock v. Pemberton*, 4th Dist. Lawrence No. 13CA1, 2013-Ohio-4002, at ¶27;

*Cartwright v. Allen*, 12th Dist. Fayette No. CA2011–10–025, 2012-3631, at ¶10.   Thus, an

appellate court will not reverse a trial court's decision if some competent, credible evidence

supports the decision.   *Hubbard Family Trust v. TNT Land* Holdings, LLC, 2014-Ohio-772, 9

N.E.3d 411, at ¶62 (4th Dist.) *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, at ¶15 (4th

Dist.).

{¶ 23}  Here, the trial court's ruling is based almost entirely on the wording of the

Holiday Haven No. 8 plat map.   Because that map made no mention of assessing fees to

maintain the subdivision roadways, sufficient evidence exists to rule against Holiday Haven on

that issue.   In short, no provision allows for the Paulsons to be assessed road maintenance fees.

{¶ 24}  On the other hand, the plat map includes a provision to require the approval of

structures before construction.   Again, we decline to pass on the specifics of that provision

because it would constitute an advisory opinion.   However, the declarations in the plat map are

sufficient to establish that someone has the authority to approve buildings constructed on the

Paulsons' lots.   Thus, the trial court correctly opted not to quiet title on that issue as it appears

that either Holiday or any future successor-in-interest may assert that right.

{¶ 25}  Therefore, because we believe that sufficient evidence exists to support the trial

court's finding, we hereby overrule the cross-assignment of error.   Accordingly, having found no

merit in the assignments of error or the cross-assignments of error, we hereby affirm the trial

court's judgment.

JUDGMENT AFFIRMED.

[Cite as *Holiday Haven Members Assn. v. Paulson*, 2014-Ohio-3902.]
<u>JUDGMENT ENTRY</u>

It is ordered the judgment be affirmed and that all parties split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion
For the Court

BY:_____
Peter B. Abele
Presiding Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.