[Cite as *Reeves v. Tait*, 2022-Ohio-393.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

RUTH REEVES,                                    :
                                                :        Case No. 20CA38
     Petitioner-Appellant,                     :
                                                :
     v.                                        :        <u>DECISION AND JUDGMENT</u>
                                                :        <u>ENTRY</u>
PAIGE TAIT, ET AL.,                             :
                                                :
     Respondents-Appellees.                    :        **RELEASED: 02/02/2022**

<u>APPEARANCES:</u>

Laura A. Knab, Marietta, Ohio for Appellant.

William L. Burton, Marietta, Ohio for Appellee.

Wilkin, J.

{¶1} This is an appeal by petitioner-appellant, Ruth Reeves ("Reeves"), from a Washington County Court of Common Pleas judgment entry that denied her petition for grandparent visitation rights due to a lack of standing. Reeves appeals asserting a single assignment of error: "[t]he trial court erred in finding Petitioner had no standing to petition the court for grandparent visitation under R.C. 3109.12 with regard to minor child, [R.T.]."[1] There was no transcript of any proceeding from the trial court, so after reviewing the party's arguments, trial-court pleadings, and applicable law, we find that the trial court did not err in denying Reeve's petition. Therefore, we affirm the trial court's judgment entry

---

[1] Reeves sought visitation of all three of her grandsons, R.T., J.T., and B.T., and the court found that she lacked standing to seek visitation of all three. However, her appeal addresses only R.T., so our decision is limited to him.

denying Reeve's petition for lack of standing.

BACKGROUND

{¶2} Reeves is Paige Tait's mother.  Paige Tait ("Paige") and Joseph Fields ("Joseph") were married on November 5, 2013.  On November 23, 2013, Paige gave birth to R.F. n.k.a. R.T.  Approximately two years later, on September 13, 2015, Paige and Joseph divorced.  Subsequent to her divorce, Paige married Kelly Tait ("Kelly").  During their marriage, Paige and Kelly had two sons, J.T and B.T, and Kelly adopted R.F. and changed his name to R.T.

{¶3} As their maternal grandmother, Reeves filed a motion seeking visitation with her three grandsons pursuant to R.C. 3109.051(B) and (C), and R.C. 3109.12.  Appellees-respondents, Paige and Kelly, filed a response arguing that all three children "are now the children of a married couple."  They claimed that "the biological mother [Paige] and her husband [Kelly] are joined in their effort to prevent [Reeves] further access to their children as a direct result of abusive and detrimental behavior on the part of [Reeves]."

{¶4} The magistrate issued a decision that concluded that Reeves lacked standing to seek visitation of her three grandchildren.  The magistrate first determined that Reeves could not seek visitation under R.C. 3109.051(B) because the "situational premise" of the statute - "divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child" – "does not apply to the facts of this case."  The magistrate also found R.C. 3109.12(A), which requires the mother of a child to be unmarried at the time

she gives birth, did not apply because Paige was married at the time she gave birth to her three children.

**{¶5}** Reeves objected to the magistrate's decision.  She acknowledged that Joseph was R.T.'s biological father, but claimed that because Paige and Joseph divorced and Kelly subsequently adopted the child, Joseph is no longer considered R.T.'s father for purposes of this case.  Rather, Reeves asserted that Paige's current spouse, Kelly, who adopted R.T., is R.T.'s father. Therefore, Reeves argued because Paige was not married to Kelly when she gave birth to R.T., Paige was unmarried for purposes of R.C. 3109.12.  Thus, Reeves maintained that she had standing to file a petition seeking visitation under that provision.

**{¶6}** The trial court overruled Reeves' objections, finding that R.C. 3109.051(B) was not applicable because the "Court no longer has jurisdiction over [R.T.], as he has been adopted by Kelly and the parental rights of [R.T.'s] biological parent, Joseph, have been terminated, *nor was he born to an unmarried woman*."  (Emphasis added.)  The court also found that neither J.T nor B.T. were born to an unmarried woman.  Therefore, the court overruled Reeves' objections and adopted the magistrate's decision.  It is this judgment that Reeves appeals.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FINDING PETITIONER HAD NO STANDING TO PETITION THE COURT FOR GRANDPARENT VISITATION UNDER R.C. 3109.12 WITH REGARDS TO MINOR CHILD [R.T.].

**{¶7}** Reeves asserts that the stepparent adoption of R.T. "did not sever the familial ties for the mother's family[,]" and therefore she has standing under R.C. 3109.12 to pursue visitation rights with her grandson, R.T., citing *Moore v. Strassel*, 4th Dist. Pickaway No. 97CA32, 1998 WL 101354 (Feb. 26, 1998). She acknowledges that "[i]f a child is born to an unmarried woman, the parents of the woman … may file a complaint requesting the court … to grant them reasonable companionship or visitation rights with the child." She claims that "[Kelly] Tait's adoption broke any ties that the family of the natural father previously had to the minor child. * * * The adoption related back to birth and as such, Mr. Tait is the father listed on [R.T.'s] birth certificate." Thus, Reeves argues that at the time of the child's birth, Paige was not married to the person who is currently identified as R.T.'s father. Accordingly, Reeves maintains Paige was unmarried at the time that she gave birth to R.T., so Reeves has standing under R.C. 3109.12 to seek visitation with R.T.

**{¶8}** In response, appellees argue that Reeves' assertion that "[a]t the time of birth, the legal parents of [R.T.] were unmarried" - is incorrect. Appellees cite to a North Carolina court order that indicates Paige and Joseph were married at the time R.T. was born. Consequently, appellees argue that Paige was not unmarried when she gave birth to R.T., which is a requirement under R.C. 3109.12(A) for a relative to petition for visitation. Accordingly, appellees argue that the trial court did not err in holding that Reeves lacked standing to petition for visitation with R.T.

A.  Standard of Review

**{¶9}** Because standing is a question of law, we apply a de novo standard of review.  *Holiday Haven Members Assn. v. Paulson*, 4th Dist. Hocking No. 13CA13, 2014-Ohio-3902, ¶ 13.  "De novo appellate review means that we afford no deference to a trial court's decision and, instead, conduct our own, independent review of the evidence."  *Id*., citing *Wells Fargo Bank, N.A. v. Odita,* 10th Dist. Franklin No. 13AP-663, 2014-Ohio-2540, ¶ 8.

**{¶10}** "[G]randparents have no constitutional right of association with their grandchildren."  *In re Martin*, 68 Ohio St. 3d 250, 252, 626 N.E.2d 82 (1994), citing *In re Schmidt*, 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986).  Rather, the only right for grandparents to visit their grandchildren "must be provided for by statute, and that the Ohio statutes allow visitation only if it is in the grandchildren's best interest."  *Id*., citing *In re Whitaker,* 36 Ohio St.3d 213, 217, 522 N.E.2d 563 (1988).  "The General Assembly has authorized grandparent visitation in three situations: (1) in divorce, dissolution, legal separation, or annulment proceedings (R.C. 3109.051); (2) where the parent of the child is deceased (R.C. 3109.11); and (3) where the child is born to an unmarried mother * * * (R.C. 3109.12[A])." (brackets sic.) *Id*. at 253, *see also McFall v. Watson*, 4th Dist. Vinton No. 8CA667, 2008-Ohio-5205, ¶ 12.  "Grandparental visitation rights in Ohio do not vest until the occurrence of [at least one these three] disruptive precipitating event[s]" occurs.  *In re Gibson*, 61 Ohio St. 3d 168, 169, 573 N.E.2d 1074 (1991).

### B. Analysis

**{¶11}** Reeves' complaint sought visitation under R.C. 3109.051, as well as R.C. 3109.12.  The trial court found that Reeves lacked standing under both provisions.  However, on appeal, Reeves challenges the trial court's interpretation of R.C. 3109.12 only.  Accordingly, our analysis is limited to R.C. 3109.12, which states:

> (A)    If a child is born to an *unmarried* woman, the parents of the woman and any relative of the woman may file a complaint requesting the court * * * to grant them reasonable * * * visitation rights with the child.
>
> * * *
>
> (B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child.  * * *.
>
> The *marriage or remarriage of the mother* or father of a child *does not affect the authority of the court under this section to grant* the natural father reasonable parenting time rights or the parents or relatives of the natural father or the *parents or relatives of the mother of the child reasonable* companionship or *visitation rights* with respect to the child.

(Emphasis added.)

**{¶12}** Reeves acknowledges the "unmarried" requirement in R.C. 3109.12(B), but she asserts that "[t]he issue in this case is whether the subsequent marriage of the parents of the minor child *to each other* interferes with the Court's authority to grant reasonable companionship to relatives after marriage." [Emphasis sic.]  In effect, Reeves maintains the question is whether Paige was married to Kelly when she gave birth to R.T., and because she was

not, Paige was "unmarried" at the time that she gave birth to R.T. for purposes of R.C. 3109.12(A). We agree with Reeves that the "disruptive precipitating event" that determines whether Reeves has standing to seek visitation with R.T. is whether Paige was unmarried when she gave birth to R.T. However, we disagree with Reeves' assertion that the question is whether Paige was married to *Kelly*.

{¶13} "Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent." *In re Collier*, 85 Ohio App. 3d 232, 237, 619 N.E.2d 503 (4th Dist. 1993), citing *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 218, 574 N.E.2d 457 (1991). "Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting or inserting words; that is, we have no authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation." *State v. Clemons*, 2013-Ohio-3415, 996 N.E.2d 507, ¶ 7 (4th Dist.), citing *State v. McDonald,* 4th Dist. Ross No. 04CA2806, 2005-Ohio-3503, ¶ 11.

{¶14} "[T]he clear language of R.C. 3109.12, if a child is born to an unmarried mother, the grandparents may request visitation rights." *Moore v. Strassel*, Pickaway No. 97 CA 32, 1998 WL 101354, *3 (Feb. 26, 1998). We find this language necessarily asks whether the woman was married at the time that she gave birth to the child. At the time that Paige gave birth to R.T. she was still married to Joseph. Therefore, for purposes of R.C. 3109.12(A), Paige was not unmarried when she gave birth to R.T. Without the occurrence of that

disruptive precipitating event, Reeves lacked standing to seek visitation under R.C. 3109.12.

{¶15} Contrary to Reeves' argument, there are no words in R.C. 3109.12 that indicate that a woman's marriage, subsequent to the birth of her child, relates back to date of the child's birth for purposes of R.C. 3109.12(A). To accept Reeves' argument that Paige's subsequent marriage to Kelly and his adoption of R.T. is the disruptive precipitating event changing Paige's marital status at the time of R.T.'s birth would require us to insert words into R.C. 3109.12(A) that do not exist, which is beyond our authority. Only the General Assembly has the authority to enact, amend, or repeal laws. *City of Toledo v. State*, 2018-Ohio-2358, 154 Ohio St. 3d 41, 47, 110 N.E.3d 1257, citing Article II, Section 1, and Article III, Section 5 of the Ohio Constitution.

{¶16} Our plain reading of R.C. 3109.12(A) is also consistent with its purpose, which "authorizes a parent of an unmarried woman to seek visitation with a child born to her [because the] statute 'recognizes that the * * * maternal * * * relatives of a child born to an unmarried mother often play a significant role in the care and upbringing of a child, which can be strained or severed as time progresses * * *.' " *In re H.A.*, 2d Dist. Montgomery No. 25832, 2013-Ohio-5457, ¶ 4, quoting *Nicoson v. Hacker,* 11th Dist. Lake No. 2000-L-213, 2001 WL 1602666, *2 (Dec. 14, 2001).

{¶17} Therefore, we conclude that the plain language of R.C. 3109.12(A) requires that a mother be unmarried at the time she gives birth to a child as a

prerequisite to the mother's parents seeking visitation with their grandchildren. Accordingly, the future event of divorce, remarriage and adoption of the child are not relevant because what matters is the mother's marital status at the time of the birth of the child. At the time Paige gave birth to R.T., she was married to her, now ex-husband, Joseph Fields. Consequently, because there was no disruptive, precipitating event (i.e., that Paige was not unmarried at the time she gave birth to R.T.), Paige's mother, Reeves, had no standing to seek visitation rights with R.T. under R.C. 3109.12.

CONCLUSION

{¶18} Because R.C. 3109.12(A) permits a mother's parent or relatives to seek visitation with their daughter's children only if the mother is unmarried at the time of their birth, Reeves lacked standing to seek visitation with R.T. because Paige was married at the time she gave birth. Consequently, the trial court did not err in denying Reeves' motion for visitation due to a lack of standing. Therefore, we overrule Reeves' assignment of error and affirm the judgment of the trial court denying Reeves' petition.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**